STEVENS AND OTHERS *against* COOPER AND OTHERS.

COOPER AND OTHERS *against* STEVENS AND OTHERS.

Where several lots of land are mortgaged, the mortgagor, or purchaser under him, cannot set up a *parol* agreement, made at the time of the mortgage, that in case the mortgagor sold either of the lots, the mortgagee would release the lot so purchased from the mortgage, on being paid a certain sum, per acre, by the purchaser.

Where six separate lots, or parcels, of land were mortgaged, and the mortgagee, afterwards, released four of the lots from the mortgage, leaving the original debt to stand charged on the remaining two, it was held, that the two lots were chargeable with their ratable proportion only of the original debt and interest, according to the relative value of the six lots at the date of the mortgage.

Where land is charged with a burden, each part ought to bear no more than its due proportion of the charge ; and equity will compel each part to a just contribution. And a creditor cannot, by any assignment or act of his, deprive the co-debtors, or owners of the land, of their right of contribution against each other.

THE original bill, which was filed *April* 7th, 1807, stated, that on the 16th of *March*, 1795, *William Cooper* conveyed to *John Richardson,* lot No. 98., in *Tully ;* lot No. 88., in *Brutus ;* lot No. 82., in *Camillus ;* lot No. 29., in *Ulysses ;* lot No. 72., in *Sempronius ;* and lot No. 46., in *Dryden ;* being 2,900 acres of land, for the consideration of 2,300 pounds, for which a bond and mortgage were given. That, at the time of purchase, it was agreed by *Cooper,* that on a sale of any of the lots, by *Richardson,* and the purchaser paying to *Cooper,* at the rate of two dollars per acre, with interest, he would release such lot from the mortgage ; that *Richardson* sold lot No. 82., in *Camillus,* to *William Stevens,* who paid to him a sum of money above the two dollars per acre, which he was to pay to *Cooper,* to whom he made known the purchase and terms of sale, and who recognised

the agreement with *Richardson*, and promised to release the lot on receiving payment of the two dollars per acre ; that *Stevens*, and others under him, made valuable improvements on the lot, and died *March* 1st, 1801, leaving the plaintiffs, his widow and children, and heirs at law.   On the 20th of *July*, 1801, the plaintiffs paid to *Cooper* 600 dollars, who promised to apply it, exclusively, to lot 82, in *Camillus*, and gave a receipt accordingly.   That the mortgage was transferred to *Abijah Hammond ;* that *Richardson*, after he sold the lot to *Stevens*, sold lots 98., 88., 29., and 46., above mentioned ; and, in pursuance of the original agreement, obtained from *Cooper* a release of these lots from the mortgage, on giving him a bond and warrant of attorney to confess judgment thereon, for the amount due, at two dollars per acre, and which bond and warrant were received in discharge of so much of the mortgage.   This *release*, which was executed the 24th of *October*, 1797, stated the mortgage, and that *Richardson*, being desirous to have part of the lots released from the mortgage, had offered ample security ; and as it was reasonable, he, *Cooper*, in consideration of the security, did release, &c. reserving the mortgage in full force against the other two lots, 72. and 82. ; that, at the time judgment was entered upon the bond, *Richardson* was possessed of sufficient property to satisfy it ; and a failure to collect the amount was owing to the indulgence of *Cooper ;* that the plaintiffs have since tendered to *Cooper*, and to *Hammond*, the residue of the money due on lot 82., at two dollars per acre, if they would discharge the mortgage, which they refused to do, and have since proceeded to advertise the lot for sale, under the mortgage, &c.

*Cooper*, in his answer, dated the 21st of *April*, 1808, denied the parol agreement, stated in the bill, between him and *Richardson*.   He alleged, that lot 82. was far more valuable than the other lots ; that, before he made the assignment to *Hammond*, he would have been willing to have received from *Stevens* such part of the bond and mortgage as

would have been proportionate to the value of lot 82., and to have released the mortgage thereon, and may have so far promised: he admitted the release of the four lots, but denied that it was given under the pretended parol agreement; that, on the 21st of *July*, 1801, after the assignment to *Hammond*, which was for 7,500 dollars, the plaintiffs paid him 600 dollars, and he gave a receipt, stating that it was " for interest due on lot 82., in *Camillus*, mortgaged by him to *Richardson*, and since assigned, in part, to *A. Hammond*; of which sum, he paid over to *A. Hammond*," 550 dollars.

*Hammond*, in his answer, denied any knowledge of the agreement, but admitted that, at the time of the assignment to him, he understood that *Richardson* had sold the four lots, and that *Cooper* had released them from the mortgage.

The *cross bill*, filed the 19th of *May*, 1809, prayed, that the heirs, &c. of *Stevens* might be decreed to pay the 2,320 pounds, and interest, due on the mortgage, or that the lots 82. and 72. might be decreed to be sold, &c. *Richardson*, in his *answer*, set up the parol agreement, and stated that *Cooper* released the four lots, on *Richardson's* paying at the rate of two dollars per acre, pursuant to the agreement.

The other defendants also set up the same parol agreement as stated in the original bill.

The *parol* agreement stated to have been made at the time of giving the mortgage, was proved by several witnesses on the part of the plaintiffs.

*Van Vechten*, for the plaintiffs, contended, that the *parol* agreement was valid, as against *Cooper* and *Hammond*. It did not contradict the *mortgage*, which, moreover, was an interest of a *personal* nature, being a mere *incident* of the debt. (*Newland on Cont.* 197. *Rob. on Frauds*, 274. 3 *Johns. Cas.* 322.)

*Hammond* took the mortgage subject to all equity existing between the original parties; (*Sugden's Law of Vend.*

467. 2 *Johns. Rep.* 595. 4 *Vesey,* jun. 118. 289. 9 *Vesey,* 264.;) *Cooper* was his *agent,* and he must be regarded as a purchaser with *notice.* (2 *Fonbl.* 158. s. 4.)

Again, *Cooper* knew of the sale of the lot to *Stevens,* and had no right to discharge the mortgage from the four lots, and leave the whole debt charged on the other two; the lot sold to *Stevens,* at most, would be liable only to contribute its proportion of the original debt. ( 5 *Vin. Abr.* 561. (A.) pl. 4. 6. 13. 18, 19. 23, 24, 25. 27. 3 Co. 12. *Res.* 2. 2 *Pothier,* 18. 3 *P. Wms.* 98. 1 *Ch. Cas.* 271. 2 *Vern.* 117.) At any rate, the plaintiffs ought to be exonerated from the mortgage, on paying two dollars per acre, with interest.

*Henry,* contra, contended, that evidence of the parol agreement was inadmissible, for it was contradictory to the deed of mortgage. By that deed, each lot was bound for the whole debt. The agreement makes each lot answerable only *pro rata,* and thereby substantially varies the written deed.

He, then, entered into a minute examination of the parol proof, and contended, that it was contradictory and uncertain, and showed how important it was to adhere to the established rule of evidence, which precluded the admission of parol evidence to vary a written instrument.

THE CHANCELLOR. 1. The plaintiffs in the original suit seek to avail themselves of a parol agreement, alleged to have been made between the parties to the mortgage at the time it was executed, by which each lot was to be bound only for a ratable proportion of the mortgage debt. The mortgage in this, as in ordinary cases, bound every part and parcel of the mortgaged premises for the entire debt, and if such a parol agreement, as is charged, can be proved and set up, it goes to vary, essentially, the operation of the mortgage deed.

This agreement is proved by *Richardson*, the mortgagor, as being concurrent with the execution of the mortgage, and part of the original agreement. It is as explicitly denied by the mortgagee in his answer. Two witnesses, however, prove subsequent conversations with the mortgagee, in which the agreement was admitted, but the release executed by *Cooper* to *Richardson*, in *October*, 1797, and accepted by him, is pretty strong evidence that no such agreement was then understood to exist.

It is, however, unnecessary to enter into an examination of the weight due to the parol proof, for I am satisfied that the objection, upon the argument, to its admissibility, was well taken. There is no rule of evidence better settled, than that which declares that parol evidence is inadmissible to contradict, or substantially vary, the legal import of a written agreement. Such testimony is not only contrary to the statute of frauds, but to the maxims of the common law; and the rules of evidence on this, or on most other points, are the same in courts of law and of equity. (*Lake* v. *Philips,* 1 *Ch. Rep.* 59. *Binstead* v. *Coleman, Bunb.* 65. *Parteriche* v. *Powlet,* 2 *Atk.* 383. *Irnham* v. *Child,* 1 *Bro.* 92. *Portmore* v. *Morris,* 2 *Bro.* 219. *Meres* v. *Ansell,* 3 *Wils.* 275. *Preston* v. *Merceau,* 2 *Black. Rep.* 1249.) The general rule is certainly not to be questioned or disturbed. It ought not to be a subject of discussion. It is as well grounded in reason and policy as it is in authority. Nor does this case come within any exception admitted here to the operation of the rule; for there is no allegation of fraud, mistake, or surprise, in making or executing the mortgage; and those, I believe, are the only cases in which parol evidence is admissible in this court against a contract in writing. (*Marquis of Townsend* v. *Stangroom,* 6 *Ves.* 328. *Rich* v. *Jackson, ib.* n.)

There is another rule which has some connexion with this branch of the law of evidence, and which will, in certain cases, and on certain terms, admit an agreement in writing,

*1815.*

STEVENS
v.
COOPER.

concerning lands to be *discharged* by parol. But the evi= dence in such cases is good only as a defence to a bill for a specific performance, and is totally inadmissible, at law or equity, as a ground to compel a performance in specie. (*Sugden*, 109—114., 3d *London* edition, where the cases are collected.) And the rule has no sort of application to this case, which sets up a parol agreement as being part of the original agreement, and the professed object of which is to alter, by substantially restricting, the legal effect and ope- ration of the mortgage.

2. The next and only remaining point in this case is, whe- ther the release by the mortgagee, on the 24th of *October*, 1797, of four of the lots included in the mortgage, does not, in equity, ratably reduce the power of the mortgage upon the remaining lots, inasmuch as it deprives the owners of those lots of their right of contribution as against the lots so released.

It is a doctrine well established, that when land is charged with a burden, the charge ought to be equal, and one part ought not to bear more than its due proportion ; and equity will preserve this equality by compelling the owner of each part to a just contribution. (*Sir Wm. Harbert's Case*, 3 *Co.* 14. *Harris* v. *Ingleden*, 3 *P. Wms.* 98, 99.) I need not go at large into this doctrine. It is perfectly well understood ; and I had occasion recently to examine it in the case of ° *Ante*, p. 409. *Cheesebrough and others* v. *Van Schaick and others.** The court will likewise compel the creditor to aid this right of contribution, by assigning his bonds and securities to the debtor, or surety, or owner of the land, whom he charges with his whole demand, and they will not permit him, volun- tarily, to defeat this right. He owes a duty to his debtors, not to impair their rights as against each other. But here the mortgagee has deprived the owners of lot No. 72. and 82. of this recourse, by previously discharging the other lots ; and he ought not, then, in equity, to charge them with a greater burden than they would have been subject to upon

the principle of contribution, if no such discharge had taken place. This is a clear and fundamental rule of justice, which must strike, at once, every discerning mind, and which *Pothier* has illustrated in his *Treatise on Obligations*, a work which is founded in sound ethics as well as upon the basis of the civil law. (*Traité des Oblig.* No. 275. 520.)

I shall, therefore, direct a reference to a master to ascertain the proportion of the principal sum mentioned in the mortgage, with the interest, that would, as between the owners of the several lots, be ratably chargeable upon each of the six lots contained in the mortgage ; and that, in making such apportionment, due regard be had to the relative value of each lot at the date of the mortgage ; and that he take such proof on this point, as the parties may furnish ; and that he further ascertain and report the proportion of the debt that lots 72., in *Sempronius*, and 82., in *Camillus*, would be jointly chargeable with upon such apportionment; and this latter sum, with interest, together with the costs of advertising under the mortgage, and after crediting what has been paid by the plaintiffs, is what they ought to be decreed to pay, or that the mortgage be foreclosed.

Decree accordingly.