*New-Haven,*
July, 1837.

Osborn and another *against* Carr and others.

Osborn
*v.*
Carr.

12   195
74   412

Carr *against* Osborn and others.

In *July,* 1830, *A* mortgaged sundry pieces of land in *W.*, including *white-acre*, of the value of 14,560 dollars, to secure certain debts and liabilities to *B;* and in *July*, 1831, *A*, as additional security for the payment of a part of such debts and liabilities, mortgaged to *B* sundry tracts of land in *N.*, of the value of 6000 dollars. In *May*, 1831, *A*, in pursuance of a parol agreement with *B*, sold and released *whiteacre*, for its full value, to *O*, who immediately took possession, and other parcels of the premises in *W.* to other purchasers; release deeds were given by *B*, to the purchasers, and the proceeds were applied on the mortgage debt. In *August*, 1832, *A* mortgaged the lands in *W.*, except *whiteacre*, of the value of 6,360 dollars, to *C;* and in *June*, 1833, *A* mortgaged the lands in *N.* to *D.* Each of these mortgage deeds was recorded on the day of its execution, in the records of the town, wherein the premises lay. When the mortgage from *A* to *D* was given, *D* had no notice of the mortgage to *C*, unless the record gave him constructive notice. In *August*, 1833, *D* and *O* paid to *B* the balance of the debt secured by both mortgages, and received from *B* a release of the mortgaged premises, and an assignment of his interest in the other securities, which he then held. *D* then, in conjunction with *A*, sold the lands in *N.* to *S*, and from *S* these lands afterwards passed to *H;* the purchasers having no knowledge of *C's* incumbrance, except such constructive notice, as the record of it in *W.* afforded. *O* released to *D* his interest in the lands in *N.;* and *A* and *D* released to *O* their interest in *white-acre.* In *September*, 1834, *D* released and assigned his interest in the *W.* mortgage, and the securities which he and *O* received from *B*, to *P*, who, as endorsee for *A*, had been obliged to pay some of his liabilities to *B*. There is now due to *O* and *P* from *A*, on the debts assigned by *B* and secured by the mortgages, 9,743 dollars; and to *C*, upon the debts secured by the mortgage to him, 6,180 dollars. On a bill of foreclosure by *O* and *P*, and a cross-bill by *C* to redeem, it was held,

1. That *O* should be protected in his title to *white-acre;* and that *C* had no equitable right to redeem this property, or to have the proceeds applied to the extinguishment of the original mortgage debt:

2. That *H* was equally entitled to protection, as to the lands purchased by him; his purchase having been made *bona fide*, and without actual notice of *C's* mortgage:

3. That constructive notice, by the record of a mortgage deed, is limited, in its effects, to the specific incumbrance recorded, and consequently, cannot affect a party taking security on other lands in another town:

4. That *C* had no priority over, or superior equity to *D*, on account of the nature of his debt, the debt of each being *bona fide;* nor from any knowledge in fact, on the part of *D*, of *C's* mortgage; nor from constructive notice to *D*, by the records of *C's* deed in *W.;* nor because *C* was prior in time, for the specific lien of *C* was only upon the lands in *W.*, and the pri-

ority in time of *C's* deed over *D's* lien on the lands in *N.* had no effect to impair the equality of *D's* equity ; nor because there was any neglect or default, on the part of *D*, in making inquiry, which was not equally charge-able to *C :*

5. That D had no superior claim in equity to have the debt thrown wholly on the lands in *W.*, because *D's* mortgage was specifically on the lands in *N.*, and *C's* was not ; for *C's* mortgage was specifically on the lands in *W.*, and *D's* was not ; and one, therefore, was as much entitled to priority, on this ground, as the other ;—or because the mortgage of the lands in *N.* was *subsidiary*, it being in point of fact *additional*, and so found by the court ;—or because *C*, prior to the mortgage to *D*, and the sale to *S*, had brought no bill to redeem, or to have *B* resort first to the lands in *N ;* for, besides other reasons, it does not appear, that *C* had any actual knowledge of the mortgage to *D* until after the assignment by *B*, and the sale to *S ;*—nor has *D* any superior claim, by reason of his having acquired the legal title to the whole property mortgaged to *B*, through the assignment from *B ;* the doctrine of tacking mortgages, so as to give priority to a third mort-gagee over an intervening one, not being applicable, and not having been adopted, in this state, in consequence of the established rule, that the re-gistry of a deed is here constructive notice, and equivalent to actual notice, of the specific mortgage recorded :

6. That as neither *C* nor *D*, in this case, can claim any superior equity or priority, the one over the other, as to their respective mortgages, each must contribute to remove the incumbrances, in proportion to the benefit, which he will receive by the removal, *i. e.* according to the respective val-ues of the tracts.

THE first of these was a bill in chancery, followed by a sup-plemental bill, brought by *Abijah Osborn* and *David W. Prescott*, against *William H. Carr, Amasa Goodyear, Ste-phen Bateman, Charles Perkins* and *Alvin Sperry*, seek-ing a foreclosure of mortgaged premises; to which *Carr* filed his answer, but the other defendants made no answer.

The other was a cross-bill, filed by *William H. Carr*, against the plaintiffs in the original and supplemental bills, and *Gerard Hallock ;* to which *Hallock* separately, and *Osborn* and *Prescott* jointly, filed their answers.

On a hearing upon the matters set forth in such bills, cross-bill and answers, before the superior court, for *New-Haven* county, *January* term, 1836, the following facts were found.

On the 6th of *July*, 1830, *Amasa Goodyear* executed to the *Phoenix Bank*, a mortgage of several pieces of land situa-ted in *Waterbury*, particularly described in the deed of con-veyance, of the value of 14,560 dollars, as collateral security

for the payment of certain notes, drafts and sums of money, and damages, costs and interest thereon, as specified in the condition to the deed, which was duly recorded in the registry of deeds in *Waterbury*, at the date of its execution. On the 1st of *July*, 1831, *Goodyear*, as additional security for the payment of a part of the debts and liabilities secured by the previous mortgage, executed a mortgage to the bank, of certain tracts of land, of the value of 6,000 dollars, situated in *New-Haven;* which tracts, and debts, and liabilities, are described in the deed and condition annexed thereto, recorded in the records of deeds in *New-Haven*, on the day of its execution; subject, as to a part of the premises, to a previous mortgage to the corporation of *Yale-College*, amounting, at the time of its payment, to the sum of 496 dollars, 40 cents.

When the first deed was executed, the bank, by parol, authorized *Goodyear* to sell, from time to time, as he should be able, each and all of the parcels of land described in it, at their fair value, to be paid to the bank; who promised, by parol, upon the receipt of the proceeds of the sales, to release to the purchasers, all their interest in the tracts so sold. Pursuant to this authority, sales were made of parts of the tracts, at their full value, to *Benham & Brown*, for the sum of 1300 dollars, and to *Isbell, Terrell & Tomlinson*, for the sum of 2,000 dollars, and the avails applied towards the payment of the indebtedness secured by the mortgage; and release deeds were executed to them, by the bank;—to the former, on the 4th of *May*, 1832, and to the latter, on the 6th of *September*, 1833.

On the 4th of *May*, 1831, *Goodyear* contracted, by parol, with *Osborn*, for the sale of the two tracts of fifteen acres and six acres, contained in the first mortgage to the bank, for the sum of 3,400 dollars, being their full value; the consideration to be paid by *Osborn*, by discharging a debt due to him from *Goodyear*, of nearly the same amount, and the balance in money. The possession of these two parcels was surrendered to *Osborn*, on the 10th of *May*, 1831, who, on the same day, took possession and paid the consideration money, as agreed; and has ever since remained in the open possession of them as owner.

On the 1st of *August*, 1832, *Goodyear*, as collateral security for the payment of a note, executed by *A. Goodyear & Sons* to *William H. Carr*, executed to *Carr*, a mortgage

deed of a part of the tracts of land situated in *Waterbury,* previously mortgaged to the bank; which deed was recorded in the land records of *Waterbury,* on the day of its date. The tracts of land described in this deed, were of the value of 6,360 dollars.

On the 1st of *June,* 1833, *Goodyear,* to secure a debt due from *A. Goodyear & Sons* to *William H. De Forest & Co.,* contracted previous to the mortgage to *Carr,* executed to them, a mortgage of the lands in *New-Haven* previously mortgaged to the bank; which deed was recorded in the land records of *New-Haven, June* 1st, 1833. When this mortgage was taken, the mortgagees had no notice of the debt and mortgage to *Carr,* unless the record of the mortgage to him, in the registry at *Waterbury,* was, by law, constructive notice to them.

On the 19th of *August,* 1833, *De Forest & Co.* and *Osborn* paid to the bank, the amount then due and secured by the two mortgages to them, being 8,206 dollars, 81 cents, and received from the bank, an assignment of all their interest in certain bills of exchange, specified in a schedule annexed to the assignment, which was parcel, and all that remained to the bank, of these securities. On the 6th of *September,* 1833, the bank released to *Deforest & Co.* and *Osborn,* by deed of that date, recorded in the records of *Waterbury* and *New Haven,* on the 15th of *September,* 1833, all their interest in the remaining parts of the lands mortgaged to them, situated in said towns; having previously released portions of the lands so mortgaged to them, to *Benham & Brown,* and *Isbell, Terrell & Tomlinson,* and also assigned to *De Forest & Co.* and *Osborn,* all their claims still due and unpaid, secured by their two mortgages.

After this assignment, *Goodyear* and *De Forest & Co.,* sold to *Coley & Smith,* the tracts of land lying in *New-Haven,* mortgaged to the bank, for the sum of 6,500 dollars, being their full value, to be paid as follows : 496 dollars, 40 cents, to raise the mortgage to *Yale-College ;* 2,391 dollars, 96 cents, in a debt against *A. Goodyear & Sons* due *Coley & Smith,* (which debt, except 33 dollars thereof, accrued prior to *August* 1st, 1832, and all prior to *September* 7th, 1832,) which had been assigned to *De Forest & Co.* ; and 3,051 dollars, in payment of the debt to *De Forest & Co.,* secured by the mortgage to them of the lands in *New-Haven ;* and the balance,

560 dollars, 64 cents, in part payment of other debts due to them from *A. Goodyear & Sons.*

To carry this sale into effect, *Goodyear*, on the 5th of *September*, 1833, released to *De Forest & Co.*, all his interest in these lands. On the 6th of the same month, *De Forest & Co.* conveyed them to *Coley & Smith*, by deed of warranty, and received from them, the consideration agreed to be paid, and applied it in the manner before stated. This application was made with the consent of *Goodyear*, and in pursuance of the aforesaid arrangement; *Coley & Smith* having been induced to make the purchase in consequence of an agreement that their debt against *Goodyear & Sons* should be applied in part payment, and for that purpose was assigned to *De Forest & Co.*

On the 6th of *September*, 1833, after the release from the bank to *Osborn* and *Deforest & Co.*, *Goodyear* and *De Forest & Co.* released to *Osborn* all their interest in the two tracts of fifteen acres and six acres, for the purpose of carrying into effect, the parol contract of sale of those tracts, before mentioned.

Afterwards, on the 7th of *September*, 1833, in pursuance of a previous agreement, and to secure the title to the lands in *New-Haven* conveyed to *Coley & Smith*, *Osborn* released to *De Forest & Co.*, all his interest in those lands.

At the time the two mortgages were executed to the bank, *De Forest & Co.* and *Osborn* had knowledge of them respectively; and at the time they received their assignment from the bank, *viz.* 19th *August*, 1833, they had notice of *Carr's* debt and mortgage. *Coley & Smith*, when they purchased, had knowledge of the mortgages to the bank; but had no notice of the mortgage to *Carr*, unless they had, by law, constructive notice of it, by the record in *Waterbury.*

Afterwards, *Coley & Smith* conveyed the lands in *New-Haven*, to *Russell* and others; who, subsequently, conveyed them to *Gerard Hallock.*

These parties respectively entered into posseesion, and made valuable improvements upon the property; and, at the times of their respective purchases, had no knowledge of *Carr's* mortgage, unless the record of it in *Waterbury*, is constructive notice to them. The conveyances by *Coley & Smith* to *Russell* and others, were made before the filing of the plaintiffs' bill; and

those to *Hallock,* afterwards, and after the answer of *Carr* had been filed, but before the filing of his cross-bill, and the supplemental bill of the plaintiffs.

On the 12th of *September,* 1834, *David W. Prescott,* for a valuable consideration, received from *De Forest & Co.,* an assignment of all their interest in the drafts and securities assigned to them and *Osborn,* by the bank, and a release of all their interest in the lands in *Waterbury,* mortgaged to the bank, except such parts as had been previously released to *Benham & Brown,* and *Isbell, Terrell & Tomlinson,* and *Osborn.*

On the 27th of *October,* 1831, *Goodyear* released to *Stephen Bateman,* all his interest in twenty acres of the land lying in *Waterbury,* mortgaged to the bank.

On the 1st of *January,* 1834, *Sperry & Perkins* levied an execution on the factory in *Waterbury,* mortgaged to the bank, but not included in the mortgage to *Carr ;* and the same was set off to them, in due form of law. Its value, at the time of the mortgage to the bank, was 1500 dollars ;—at the present time, its value is 900 dollars.

There is due to the plaintiffs, from *Goodyear & Sons,* on the debts assigned by the bank, and secured by their mortgages, with interest computed to *March* 15th, 1836, 9,473 dollars, 71 cents. There is due to *Carr,* upon the debt secured by the mortgage to him, with interest to the same period, 6,180 dollars, 40 cents.

The plaintiffs, by their original and supplemental bills, asked a decree of foreclosure, of all the property situated in *Waterbury,* contained in the mortgage to the bank, except such parts as had been conveyed to *Osborn* and *Benham & Brown* and *Isbell* and others, under the circumstances before stated, unless the whole amount of the debt found due to the bank, and assigned to the plaintiffs, should be paid. The defendant, *Carr,* by his cross-bill, sought to redeem both of the mortgages to the bank, and the whole of the premises mortgaged to them, lying in *New-Haven* and *Waterbury,* except those parts released to *Benham & Brown* and to *Isbell* and others, upon the payment, by him, of the sums justly due on the claims of the bank, secured, by the mortgages, to them. The defendant, *Hallock,* in his answer to the cross-bill, prayed that it might be dismissed as against him.

The questions arising upon the facts found by the superior court, were reserved for the advice of this court.

New-Haven,
July, 1837.

Osborn
v.
Carr.

The case was fully argued, at the term of this court, in *July*, 1836, by *Baldwin* and *Kimberly*, for the plaintiffs, and by *Hitchcock* and *Fitzgerald*, for *Carr*, one of the defendants and the plaintiff in the cross-bill. The Court, after consultation, continued the case to this term; when it was argued again, by the same counsel.

HUNTINGTON, J. This case embraces such a variety of persons, dates and conveyances, that it appears somewhat complicated. It is believed, however, that a careful examination and distinct understanding of these particulars, will render the precise question to be decided, extremely clear.

As no relief is sought by the plaintiffs, or by *Carr*, against *Benham & Brown*, and *Isbell, Terrell & Tomlinson*, the conveyances to them, in that view, may be laid out of the case. They are not made parties to these proceedings; and consequently, no decree can now pass against them. Independent, however, of the fact that they are not before the court, it is apparent, if they were, no decree ought to be passed against them; for it is found, the sales were made to them, by *Good-year*, pursuant to the authority given him by the bank, and the avails, being the full value of the parcels sold to them, have been applied towards the payment of the indebtedness secured by the mortgages to the bank.

The court are clearly of opinion, that *Osborn* should be protected in the title which he has acquired to the property in *Waterbury*, sold to him, by *Goodyear*, in *May*, 1831. *Carr* has no equitable right to redeem this property; for it is not included in the mortgage to him, and was sold previous to the date of his mortgage. Nor has he any just claim to the application of the proceeds of the sale, to the extinguishment of the mortgage debt to the bank. *Osborn* paid his money, on a *bona fide* contract for the purchase, made and executed before *Carr* had acquired any interest in the property: and although this contract was *by parol*, it was *executed*. The purchase moneys were paid pursuant to the agreement; possession was taken of the premises, by *Osborn;* and has ever since been continued. His equity is certainly equal to that of *Carr;* and

*New-Haven,*
*July, 1837.*

Osborn
*v.*
Carr.

having obtained the legal title, no principle which governs a court of chancery, would justify us in disturbing what is now an united equitable and legal title in him.

We are also of opinion, that a similar protection is to be given to *Hallock.* His purchase was made *bona fide*, without actual notice of *Carr's* mortgage. The property was sold by those who had the title, and at a time when *Carr* had no interest in it. The cross-bill, as to *Hallock*, must, therefore, be dismissed.

The principal question presented by the record, and in regard to which the parties before the court, entertain directly opposite views, relates to the application of the moneys arising from the sale of the property situated in *New-Haven. Carr*, by his mortgage, acquired no specific interest in or lien upon this property ; nor did *De Forest & Co.*, by their mortgage, obtain any such interest or lien in the property in *Waterbury* mortgaged to *Carr.* Each party, however, by his bill and cross-bill, seeks to throw the burden of the debt originally due to the bank, and now held by the plaintiffs by assignment, *primarily* upon the property not specifically mortgaged to the other. The plaintiffs, representing the bank, claim to foreclose the property in *Waterbury* mortgaged to *Carr*, unless the whole debt secured by it, and now due from *Goodyear*, is paid. *Carr*, on the contrary, insists, that he has a right to redeem the mortgages prior to his own ; and that if he redeems, he is entitled to the entire pledge given for the debt ;—and as the plaintiffs, or those whom they represent, have disabled themselves from giving him the entire security, in consequence of a conveyance of a part to *bona fide* purchasers, who (as we have decided) are entitled to hold it, they must, in order to give him the benefit of the whole pledge, deduct the value of the part so conveyed, from the amount of the mortgage debt. The object, therefore, of *Carr's* cross-bill, is, to compel the plaintiffs to deduct from their debt, which they hold by assignment, the value of the property in *New-Haven* which was sold, and to foreclose for the balance only, and to obtain a decree for redemption, upon payment of that balance. In support of his claim, he relies upon two general principles well settled in equity : 1. That a subsequent mortgagee has a right to redeem a prior one, and to stand in his place : 2. That where a mortgagee has a lien on two different estates, and a

subsequent mortgagee has a lien on one of them only, and the former elects to take his whole demand out of the estate in mortgage to the latter, the junior mortgagee will be entitled, either to have the first mortgagee resort to the estate not in mortgage to the junior creditor, and take satisfaction out of *that*, if it be sufficient, or to have the prior lien assigned to him, and to receive all the aid it can afford him. *Park* v. *Clinton*, 12 *Ves.* 60. *Calkins* v. *Munsel* & al. 2 *Root* 333. *Sagitary* v. *Hyde*, 1 *Vern.* 455. *Aldrich* v. *Cooper*, 8 *Ves.* 388. *Trimmer* v. *Bayne*, 9 *Ves.* 209. *Cheesbrough* v. *Millard*, 1 *Johns. Ch. Rep.* 409. 1 *Pow. Mort.* 262. *a.* 342. *a.* 344.

These principles, in their application to ordinary cases, are not denied.    It is not, however, admitted, that they are applicable to cases where the just rights of third persons will be impaired ; and the court are of an opinion, that neither party is entitled to the aid of the court, to the extent claimed by each, respectively.

The bank, (and the plaintiffs, who represent them, assumed their responsibilities) had duties to perform to each of the mortgagees subsequent to them, *viz. Carr* and *De Forest & Co.* They held separate mortgages of two different estates of the mortgagor, on one of which, *Carr* had subsequently acquired a lien by mortgage, and on the other, *De Forest & Co.* had obtained a similar lien.    *So far as relates to a redemption of the mortgages to the bank, Carr* and *DeForest & Co.* may be considered as the *debtors* of the bank, who could not justly impair their rights as against each other.    In the case of *Stevens* v. *Cooper*, 1 *Johns. Ch. Rep.* 425., the Chancellor says : " The court will likewise compel the creditor to aid the right of contribution, by assigning his bonds and securities to the debtor, or surety, or owner of the land, whom he charges with his whole demand ; and they will not permit him, voluntarily, to defeat this right.    He owes a duty to his debtors not to impair their rights, as against each other." He adds, with reference to the case before him : " Here, the mortgagee has deprived the owners of two lots, of this recourse, by previously discharging the other lots ; and he ought not, then, in equity, to charge them with a greater burden than they would have been subject to, upon the principle of contribution, if no such discharge had taken place."

If from the facts found, it appears, that the plaintiffs and Carr have equal equity, and neither has priority over the other, the propriety of applying the rule which governs courts of equity, will be quite obvious. That rule is—where land is charged with a burden, the charge ought to be equal, and one part ought not to bear more than its due proportion ; and equity will preserve this equality, by compelling the owner of each part, to a just contribution. Sir *Wm. Herbert's* case, 3 *Co.* 14. *Harris* v. *Ingleden*, 3 *P. Wms.* 98. *Cheesebrough* v. *Millard*, 1 *Johns. Ch. Rep.* 409. *Stevens* & al. v. *Cooper* & al. 1 *Johns. Ch. Rep.* 425. *Campbell* v. *Miner* & al. 4 *Id.* 334. *Derry* v. *Earl of Winchelsea*, 1 *Cox* 318. *S. C.* 2 *Bos. & P.* 270. 1 *Pow. Mort.* 344. note. If neither has any superior equity, and the fact that one has procured the legal title, cannot, upon the facts found, give him priority over the other, nothing can be more clear than that equity and justice require that each tract of land should bear its share of the burden cast upon it, according to its value. An incumbrance is thrown over the whole property. It should be raised, by each party, in proportion to the benefit which he will receive, by its removal. Neither ought to claim priority, or a benefit, at the expense of the other : and the case before us, is, in principle, the same, as if the bank had filed a bill to foreclose, against both mortgagees ; and both had brought the money into court ; and the facts appearing as they now do, by cross-bill or otherwise, the court were required to direct what amount each was to pay, as between themselves. We propose, then, to examine whether, upon the facts found, either has a priority over, or a superior equity to, the other.

1. Has *Carr* any such priority or equity over *DeForest & Co.*, as to the property in *New-Haven ?*

Certainly not, on account of the nature of his debt. The debt of each was *bona fide :*

Nor from any knowledge *in fact*, on the part of *De Forest & Co.*, that *Carr* had a mortgage on the property in *Waterbury ;* for they had no actual notice of that lien :

Nor from *constructive* notice, by the record of *Carr's* deed, when they received their mortgage ; for such notice is limited, in its effects, to the specific incumbrance recorded. It is notice only to persons claiming a right subsequently, in the *very property* described in the recorded deed. It is so far notice, be-

cause the mortgage is required to be recorded in the town where the land lies; and being so recorded, the law declares, that a subsequent incumbrancer shall be considered as having actual notice of the first mortgage, and having such notice, he shall acquire no right in *that* property, which shall interfere with the rights of the first mortgagee. Neither *Carr*, nor *DeForest & Co.*, by *constructive* notice of each other's deeds, can gain any priority or advantage, the one over the other, except in the specific property conveyed to each respectively. *Carr* cannot insist, that the property in *New-Haven* shall first be applied to the payment of the mortgage debt, for his benefit; nor can *De Forest & Co.* insist, that the property in *Waterbury* shall be first so applied, for their benefit. Indeed, we have already settled this controverted point, by protecting *Hallock*, the purchaser under *De Forest & Co.*; for he had constructive, and equivalent to actual notice of *Carr's* mortgage; and if *Carr* is entitled to the whole proceeds of the sale of the property in *New-Haven*, when he makes payment of the whole debt, he can hold the property itself against a purchaser, who bought with notice. But we have already decided, that *Hallock* is to be protected in the purchase.

Nor can *Carr* claim any superior equity, as to the lands in *New-Haven*, because his deed was prior in time: for his specific lien was only upon the property in *Waterbury*; and *De Forest & Co.'s* mortgage of the property in *New-Haven*, and the equity growing out of it, were as much prior in time to *Carr's*, as was *Carr's* prior in time as to the property in *Waterbury*. If each had taken a mortgage on the same day, or *De Forest & Co.* on the next succeeding day, would priority in time impair the equality of the equity?

Nor was there any neglect or default on the part of *DeForest & Co.* (if any at all) which is not equally chargeable to *Carr*. *De Forest & Co* were under no greater obligation to enquire into the state of the *Phœnix Bank* title, as connected with the mortgage to *Carr*, than was *Carr* to enquire of them regarding it, when he took his mortgage. If it was the duty of *De Forest & Co.* to have enquired, when they took their mortgage, whether *Carr* had not a mortgage of a part of the lands in *Waterbury*, it was equally the duty of *Carr*, to have enquired whether the bank did not hold a

second mortgage, for a portion of the same debt, of lands in *New-Haven :*

Nor was there any fact known by *De Forest & Co.,* to put them *on enquiry,* which they neglected to improve, and which impairs their equity. They had not notice of any fact, which could give *Carr* a superior claim to themselves, to property in which he had not acquired the remotest interest. It is true, they had constructive notice of *Carr's* mortgage; and we are asked to extend the doctrine of such notice, to *other lands lying in other towns.* So to extend it, would be unjust and inexpedient. We are satisfied with the rule, which gives full effect to this kind of notice, in its application to the *same lands ;* at least, we are not disposed to depart from it. But we can readily foresee the injurious results which would follow a further extension of it. If *Carr* had taken a mortgage of the lands in *New-Haven,* and neglected to record it, would he have gained priority, by reason of the *constructive* notice of the mortgage to him, of the lands in *Waterbury ?* Would he be permitted to avail himself of such notice, to protect his unrecorded deed, at the expense of a subsequent *bona fide* purchaser, without actual notice ?

2. *De Forest & Co.* have no superior claim in equity, to have the debt thrown wholly on the property in *Waterbury :*

Either, because their mortgage is specifically on the property in *New-Haven,* and *Carr's* is not ; for *Carr* may properly reply to such a claim, " my mortgage of the lands in *Waterbury* is specific, and yours is not specific upon that property ; and if merely because one is specific, and the other is not, a priority is gained as to the fund, by which the incumbrance, common to both, is to be raised, I am as much entitled to it as you are :"

Or because the mortgage of the property in *New-Haven,* is subsidiary ; for in point of fact, it was additional, and is so found by the court. Both mortgages to the bank, were, so far as it regards this controversy, *primary :*

Or because *Carr,* prior to the mortgage to *De Forest & Co.,* and the sale to *Coley & Smith,* and the assignments by the bank, had brought no bill to redeem, or to have the bank resort first to the property in *New-Haven ;* for *Carr* had no actual knowledge of the mortgage to *De Forest & Co.,* until after the assignment by the bank, and the sale to *Coley &*

*New-Haven* July, 1837.

Osborn *v.* Carr.

*Smith*—at least, none is found. He was not bound, by the constructive notice arising from the record, (as applicable to the point we are now examining) for the same reason that *De Forest & Co.* were not bound, by the constructive notice arising from the record in *Waterbury*. Again ; it may well be doubted, whether a reasonable time had elapsed to file a bill. The deed to *De Forest & Co.* is recorded *June* 1, 1833. The release from the bank is dated *September* 6, 1833 ; and recorded *September* 15, 1833. The deed to *Coley & Smith* was executed on the 6th of *September*, 1833. Further ; the rights of *Carr* do not grow out of the mere fact that he brings a bill to redeem. It is that fact, in connexion with his mortgage. Both concur to give effect to them. His rights in other mortgage securities, for the same debt, when they exist at all, do indeed arise immediately from the exercise of the power of redemption, or from the proceedings on a bill to foreclose ; but the deed to him, gives him the right to redeem. That is inseparable from his deed, as against the mortgagor and first mortgagee. It grows out of, and is dependent upon, it ; and neither the mortgagor nor the first mortgagee, sustaining that character only, can prevent him from redeeming subsisting, unpaid, prior mortgages for the same, or a part of the same, debt. *Freeman* & al. v. *McGaw* & al. 15 *Pick*. 87. As to them, the rule is the same as if it had been inserted in the mortgage to him, that upon the payment of the debt to the bank, he should have the benefit of all the *real* securities given for the same, or a portion of the same debt, which should remain outstanding and unpaid. It is only because the mortgages to *Carr* and *De Forest & Co.* are distinct and separate, and of distinct pieces of land in different towns, that *De Forest & Co.*, when they took their mortgage, are to be considered as having acted *bona fide*, and not chargeable with such notice as will prevent them from having an equity in their mortgage, equal to *Carr's* equity in his. These facts very properly deprive *Carr* of any just claim to have the property in *New-Haven* first applied in extinguishment of the debt due the bank.

Nor have *De Forest & Co.* obtained a prior right to have their debt paid out of the property in *New-Haven*, at the expense of the property in *Waterbury*, by reason of their having acquired the *legal* title to the whole, through the assignment

*New-Haven,*
*July, 1837.*

Osborn
*v.*
Carr.

from the bank. We have not adopted, in this state, the doctrine of tacking mortgages, so as to give priority to a third mortgagee over an intervening one. This is a consequence of the admitted rule, that the registry of a deed, is, here, constructive notice, and equivalent to actual notice, of the specific mortgage which is recorded. It is admitted, the weight of authority in *England,* sustains the doctrine, that *there,* the third mortgagee *may* gain priority over the second, by purchasing in the legal title, although the second deed is recorded ; for the registry of the second incumbrance, is not held, there, to be constructive notice to the third. *Latouche* v. *Dusenberry,* 1 *Sch. & Lef.* 157. *Bushell* v. *Bushell, Id.* 90. *Morecock* v. *Dickins, Amb.* 678. 4 *Kent's Com.* 173. 176. But even in *England,* if the third mortgagee has notice in fact, of the second mortgage, when he takes his own, he gains no priority, by buying in the legal title ; for in such case, he comes in *fraudulently.* It is true, that notice of the mesne incumbrance, at the time of purchasing in the legal title, is not material ; for if he had no notice when he lent his money, as distinguished from the time when he gets in the legal title, he will be protected. The reason is obvious. It was equitable, not fraudulent, to take his mortgage without notice ; and the foundation of the whole doctrine of tacking, in *England,* is, that when the third mortgagee receives his mortgage *bona fide,* without notice, his equity is considered equal to that of the second ; and each, it is said, may honestly race for the legal title ; and he who first gets it, has both law and equity for him ; and the legal title and equal equity prevail over the equity. *Marsh* v. *Lee,* 2 *Vent.* 337. *Brace* v. Dutchess of *Marlborough,* 2 *P. Wms.* 491. Ex parte *Knott,* 11 *Ves.* 608. *Taylor* v. *Baker* & al. 5 *Price* 306. *Frere* v. *Moore* & al. 8 *Price* 475. *Belcheir* v. *Butler,* 1 *Eden,* 523. 2 *Pow. Mort.* 450. *a.* 575. 4 *Kent's Com.* 176. 177. But in *Great-Britain,* actual notice to the third mortgagee is sufficient to prevent him from tacking ; because, with such notice, it would be fraudulent in him to endeavour to gain an advantage at the expense of the second mortgagee. In this state, the record of *Carr's* deed was equivalent to actual notice to *De Forest & Co.,* of the existence of that deed. They may, therefore, be said to have known, when they took their mortgage, that *Carr* had a prior one on the property in

*Waterbury.* This is the spirit of our registry act ; and if it does not amount to this, it is worse than useless. It follows, therefore, that *De Forest & Co.,* having what is equivalent to actual notice of *Carr's* mortgage, could not, by buying in the legal title, give their mortgage a priority over *Carr's,* as to the lands in *Waterbury.* As to that specific property, *Carr* has the better equity ; for he is prior in point of right. 4 *Kent's Com.* 178. *Carr's* rights are prior and superiour to those of *De Forest & Co.,* in that property, except that as assignees of the bank, the latter have both the legal title and a better equity, so far as relates to the mere extinguishment of the debt due to the bank ; and with notice of that mortgage to *Carr,* they can do nothing which will give their mortgage a priority over his. If, however, by buying in the legal title, they can give their mortgage a priority, (which they, or their assignees, are now seeking to do,) they, in effect, would deprive *Carr* of the benefit of his mortgage, so far as the amount of the mortgage debt to *De Forest & Co.* extends ; for, in this way, they would compel *Carr* to redeem their mortgage, before he could reap the fruits of his own ; and this in the face of what is equivalent to actual notice of his mortgage. They would, in this manner, acquire a right in the property in *Waterbury,* interfering with *Carr's* rights in it ; which they cannot do with actual, or what is equivalent to actual, notice. Hence it follows, that the doctrine of tacking, as understood in *England,* and which is merely giving priority to a third mortgagee, as to his mortgage, over an intermediate incumbrance, by buying in the legal title, cannot exist here ; because the record of the second mortgage is equivalent to actual notice of its existence. Such has always been the law of this state. *Franklin* v. *Gorham,* 2 *Day,* 150. 2 *Sw. Dig.* 185. But notwithstanding *De Forest & Co.* could not gain priority, as to their mortgage, over *Carr,* for the reasons stated, it is clear they have equal equity with him, as to the incumbrance of the debt due the bank, which was upon both tracts, the bank being mortgagees of both : for the record of *Carr's* deed is only constructive notice of that very incumbrance, and its effect is to prevent *De Forest & Co.* from doing any act which will impair or defeat his rights in that property. It was not notice, which made it inequitable to take a mortgage upon other property in another town, and on which *Carr* had no specific

New-Haven,
July, 1837.

Osborn
v.
Carr.

lien. This point has been, however, before considered. They have, each, equal equity in the tracts mortgaged to each, separately : and each, as to his own mortgage, is prior in time to the other. It is solely on this principle, that we have protected the purchaser under *De Forest & Co.* He, equally with them, had constructive notice—actual notice in effect— of *Carr's* mortgage ; but we hold it did not deprive him of the character of a *bona fide* purchaser.

There are other reasons than those which we have suggested, which, independent of decided cases in our own courts, would constrain us to reject the *English* doctrine of tacking. It is unjust and inequitable, and is supported there, only by the weight of authority. Chancellor *Kent* calls it " harsh and unreasonable." He says : " There is no natural equity in tacking ; and when it supersedes a prior incumbrance, it works manifest injustice. By acquiring a still more antecedent incumbrance, the junior party acquires, by substitution, the rights of the first incumbrancer over the purchased security ; and he justly acquires nothing more. The doctrine of tacking, is founded on the assumption of a principle which is not true in point of fact ; for, as between *A*, whose deed is honestly acquired and recorded to-day, and *B*, whose deed is with equal honesty acquired and recorded to-morrow, the equities upon the estate are not equal. He who has been fairly prior in point of time, has the better equity ; for he is prior in point of right." 4 *Kent's Com.* 178., 179. In the case of *Brace* v. Dutchess of *Marlborough*, 2 *P. Wms.* 491., the master of the rolls remarks : " It seems reasonable, that each mortgagee should be paid according to his priority, and hard to have a second mortgagee without remedy, who might know, when he lent his money, that the land was of sufficient value to pay the first mortgage, and also his own : to be defeated of a just debt, by a matter *inter alios acta*, a contrivance betwixt the first mortgagee and the third, is great severity : but this has been settled upon solemn debate, in a case in 2 *Vent.* 339., *Marsh* v. *Lee.*" This case was decided by the chancellor, with the assistance of Sir *Matthew Hale*, (then Chief Baron) and was, perhaps, the first case in which the *English* doctrine of tacking, was fully established. It was a precedent subsequently followed with evident reluctance, and which the courts in *Westminister-Hall* did not feel at liberty to overrule. It may

be added, that this doctrine is generally exploded in the *United States*, by which " we are relieved from a multitude of refined distinctions, which have given intricacy to this peculiar branch of equity jurisprudence." 4 *Kent's Com.* 178., 179. *Grant* v. *The United States Bank,* 1 *Caines' Ca. in err.* 112.

If the foregoing views are correct, neither *Carr* nor *De Forest & Co.,* upon the facts found by the court, can claim any superior equity or priority, the one over the other, as to their several mortgages. Each tract should, therefore, contribute to remove the incumbrance of the debt secured to the bank, *so far as it is common to both,* according to the respective value of each tract. The fund arising from the sale of the property in *New-Haven,* is not to be subjected in the hands of *De Forest & Co.,* to any claim to which it was not before subject. The rule in equity is merely, that the election of one claimant, shall not prejudice the claims of the other. 1 *Pow. Mort.* 344. Each party ought to contribute, in proportion to the benefit which he will receive, by the removal of the incumbrance ; or, in the words of the rule heretofore stated, where land is charged with a burden, the charge ought to be equal, and one part ought not to bear more than its due proportion ; and equity will preserve this equality, by compelling the owner of each part, to a just contribution.

To apply these principles to the case before us, the following advice is to be given the superior court.

Let a decree of foreclosure pass against *Goodyear, Bateman,* and *Sperry & Perkins,* to take effect, unless they pay the whole amount found due to the plaintiffs from *Goodyear & Sons,* secured by the mortgages to the bank ; and let them be foreclosed, respectively, in the order mentioned above.

Let the superior court ascertain the amount due the plaintiffs on the debt to the bank secured by the mortgage of the property in *New-Haven.* The value of the lands in *Waterbury,* mortgaged to *Carr,* is already found—6360 dollars ; and also of those set off upon execution to *Sperry & Perkins*—1500 dollars. The value of the lands in *New-Haven,* is found to be 6500 dollars ; from which is to be deducted the debt due to the corporation of *Yale-College ;* and the remainder is to be taken as their value, for the purposes of the case before us. Then, as the united values of the three tracts, is to the amount

New-Haven,
July, 1837.

Osborn
*v.*
Carr.

due the plaintiffs on the debt to the bank, secured by the mortgage of the lands in *New-Haven*, so is the value of the lands in *New-Haven*, to the proportion of the debt which they ought to discharge. From the whole amount of the debt found due the plaintiffs, secured by the two mortgages to the bank, with interest to the time of the decree, let there be deducted the sum found by the above proportion to be paid out of the avails of the sale of the lands in *New-Haven*, with interest to the time of the decree, and the remainder will be the amount which is to be found due the plaintiffs on the debt to the bank, *as against Carr*. Let a decree of foreclosure pass against *Carr*, to take effect, if, after the failure of *Goodyear, Bateman*, and *Sperry & Perkins* to make payment of the sum required to be paid by them, he shall fail to pay the amount to be paid by him. If *Goodyear, Bateman*, and *Sperry & Perkins* shall make payment, within the time limited to them respectively, let a decree of foreclosure pass, as to the property mortgaged to *Carr*, against them, in the order mentioned above, in favour of *Carr*, unless they pay to him the amount found due to him and secured by his mortgage.

Let the cross-bill be dismissed as to *Hallock*, without costs.

In this opinion the other Judges ultimately concurred.