EDWARD P. HUNT *vs.* ELISHA D. MANSFIELD AND OTHERS.

Three pieces of land belonging to *M* had been attached by a creditor. While the attachment suit was pending *M* conveyed one of the pieces, for a valuable consideration, to *H*. Afterwards *M* mortgaged the two other pieces to *B & Co.*, who had no actual knowledge of the attachment. Afterwards judgment was obtained in the attachment suit, and *B & Co.* purchased the judgment and levied the execution upon the land sold to *H*. *H* had previously tendered them the amount of the judgment, but they refused to accept it, or to levy the execution on the other pieces of land, which were sufficient to satisfy it. *B & Co.* then brought ejectment against *H*, and he brought a petition for an injunction against the prosecution of the suit. Held, 1. That *H* acquired by his purchase of one of the pieces, an equitable right as against *M* to have the other pieces first applied to the payment of the judgment. 2. That *M* could convey to *B & Co.* no better right than he himself had, and that they took the other pieces subject to the same equitable burden. 3. That the purchase of the judgment by *B & Co.* did not give them any right to levy the execution on the land purchased by *H*, so long as the other pieces were sufficient to satisfy it.

Where the records disclose an incumbrance on property of which a party is taking a conveyance, and also disclose the further fact that the incumbrance rests on other property, and, on an examination directed to such other property, the still further fact that a conveyance of the latter has been made which creates an equitable right to throw the burden of the incumbrance on the first property, the purchaser will be presumed to have made such examination, and will be regarded as constructively notified of such equity.

The case of *Osborn* v. *Carr*, 12 Conn., 195, commented on.

BILL for an injunction against the prosecution of an action of ejectment. The bill was dismissed by the superior court, (*Waldo, J.,*) and the case was brought before this court by the petitioner, by motion in error. The facts are sufficiently stated in the opinion.

*Granger* and *Peet*, for the petitioner, cited 1 Story Eq. Jur., §§ 633, 4; 2 Swift Dig., 185; 4 Kent Com., 209; *Harbert's case*, 3 Coke, 11 *b; Grant* v. *United States Bank*, 1 Caines Cas., 112; *Haines* v. *Beach*, 3 Johns. Ch., 459; *Clowes* v. *Dickenson*, 5 id., 235; *Loring* v. *Cook*, 3 Pick., 48; *Clay* v. *Smith*, 1 Bibb, 522; *Gallion* v. *M' Caslin*, 1 Blackf., 91; *Goss* v. *Lester*, 1 Wis., 43; *Anderson* v. *Neff*, 11 Serg. & R., 208, 223.

*Hubbard* and *Warner*, for respondents, cited *Osborn* v. *Carr*, 12 Conn., 195; *Mix* v. *Hotchkiss*, 14 id., 32; *Ayres* v. *Husted*, 15 id., 504.

DUTTON, J. The finding of facts in this case is somewhat voluminous, but all of them which are material to the main question are the following:—In November, 1855, Mansfield sued Monson, and attached three pieces of land in North Canaan, called the homestead, the swamp, and the depot property. The suit lay in court till the October term of the superior court in the year 1860, when the plaintiff obtained judgment for over $4,000. The property attached was more than enough to pay the judgment. In the mean time Hunt bought of Monson a part of the depot property for about $3,000, for which he gave his notes to Monson. The deed was dated March 2d, 1860. He went immediately into possession of the premises. He had no actual notice of the attachment lien. On the 24th day of May, 1860, before any of the notes were paid, Hunt, with the concurrence of Monson, took back the notes and gave new negotiable notes for the same amount to John Adam, who claimed some title to the property, and took a quitclaim of the property from him. Hunt had no actual notice at this time of the attachment lien, although it was on record.

It is not denied by the respondents that under these circumstances Hunt had a clear equitable right to require that Mansfield should levy his execution on the other pieces of property, and leave that which he had bought, so far as was practicable, free from incumbrance.

But the question then arises whether Hunt lost this right, in whole or in part, by what took place subsequently. The day after the deed from Adam to Hunt, Monson mortgaged the homestead and swamp lot to Landon, Botsford & Co., to secure *bona fide* notes previously given for about $3,000. They had no actual knowledge of the attachment lien, but knew that Hunt had bought the property contained in his deed. When Mansfield had obtained his judgment they bought it, took a transfer of it, and levied it on the depot property, to the exclusion of the principal part of the homestead and swamp property, although they were sufficient to satisfy it in full. They then brought ejectment against Hunt to recover the depot property and he brought this petition for an injunction to prevent it. Before they levied he tendered the amount of the

judgment to Landon, Botsford & Co., and demanded that they should either desist from the levy on the depot property or assign the judgment to him. They refused to do either.

On these facts the superior court, upon the ground either that the petitioner was not entitled to any relief, or that the bill was not adapted to the remedy to which he was entitled, dismissed the bill. We think both positions were erroneous.

In our opinion Hunt was not deprived, either in whole or in part, of the equitable right which his deed gave him, by the subsequent deed of a part of the property attached to Landon, Botsford & Co. He was prior in time, and generally, other things being equal, this gives in equity priority of right. Landon, Botsford & Co., by their deed, took only the right which Monson then had. It is not easy to see how this act could vary the rights of Mansfield, or of Landon, Botsford & Co. as assignees of Mansfield. Before the conveyance to Landon, Botsford & Co., Monson and Mansfield had only the equitable right of having the execution levied on the homestead and swamp property, if they were sufficient to satisfy the execution. Mansfield could not transfer to Landon, Botsford & Co. any greater equitable right than he had himself, and Monson did nothing, after his deed to them.

Landon, Botsford & Co. acquired no equitable right against Hunt by their deed. They had record notice of the attachment of the swamp and homestead property, and of course, so far as that was concerned, took their title subject to the attachment. . But it is said an examination of the records would show that the attachment covered also the depot property, and this would give them a right to throw the burden in whole or in part upon that. This is true so far as Monson is concerned. But the same examination, when extended to the depot property, would inform them that that property had been deeded to Hunt. A record of a deed or attachment is constructive notice only of incumbrances on the property which is at the time the subject of examination. The law implies notice on the ground that it is conclusively presumed that a person will not purchase an interest in a piece of land without examining the condition of the record. Such an act would be required by common

prudence. But if the examining party finds that the incumbrance on that property covers also another piece, the same prudence would require him to examine into the condition of the title of that piece of property. When Landon, Botsford & Co. took their deed, they must be presumed to have examined the record and ascertained that there was an attachment upon it. They could not have seen this without discovering that it covered also the depot property. If by reason of this they attempt to set up a claim, legal or equitable, in that property, they obviously ought to be presumed to have examined the record title to that property, and if so they must have discovered the prior deed to Hunt. Indeed, the facts found by the court show that they had knowledge of this deed without such an examination. They could not then in good faith have taken their mortgage, except subject to his prior equitable right so far as the whole property was concerned. To allow men under such circumstances and with full knowledge of the facts, to deprive a *bona fide* purchaser of rights previously acquired in whole or in part, would open a wide door to fraud.

This view of the case is fully sustained by the authorities. The lien by attachment in this state bears a very strong resemblance to the lien created at common law by a judgment. In the case of *Clowes* v. *Dickenson*, 5 Johns. Ch., 241, Chancellor Kent says: "If there be a judgment against a person owning at the time three acres of land, and he sells one acre to *A*, the two remaining acres are first chargeable in equity with the payment of the judgment debt, whether the land be in the hands of the debtor himself or of his heirs. If he sells another acre to *B*, the remaining acre is then chargeable in the first instance with the debt as against *B* as well as against *A*, *and if it should prove deficient, then the acre sold to B ought to supply the deficiency before the land previously sold to A.* In this respect we may say of him, as is said of the heir, he sits in the seat of the grantor and must take all his equitable burdens." Under the system which prevails in this state, the equitable rights of prior incumbrancers can be more easily ascertained and more clearly understood than in the case of judgment liens, and there is more reason therefore

why such a rule should be adopted. In *Gouverneur* v. *Lynch*, 2 Paige, 300, Chancellor Walworth applied the same rule where the first incumbrance was a mortgage.

In *Nailer* v. *Stanley*, 10 Serg. & Rawle, 450, Duncan, J., quotes with approbation the foregoing language of Chancellor Kent. The doctrine is also supported by many of the numerous cases quoted by the petitioners' counsel. We have met with nothing which militates against it, except a doubtful intimation in 1 Story's Equity Jurisprudence, 634 *a*, founded apparently upon *Barnes* v. *Racster*, 1 Younge & Coll., 401. In that case *A* mortgaged white acre to *B* and afterwards to *C*. He then mortgaged both white acre and black acre to *B* to secure another debt, and also the first mortgage debt. An attempt was made by *C* to compel *B* to collect his first mortgage out of black acre. The vice-chancellor refused to order this, upon the ground that when *C* took his mortgage he had no equity whatever against black acre, and that he acquired no equity by what subsequently took place. The distinction between such a case and this is too obvious to need illustration. We think therefore it would be inequitable to allow Landon, Botsford & Co. to use Mansfield's judgment to deprive Hunt of his purchase and thereby increase the security of their own mortgage.

It has been suggested in argument that Hunt is too late in his application. We do not see how he could have prevented the levy by any ordinary diligence, and such an objection comes with an ill-grace from a party who is endeavoring to perfect an inequitable advantage. The decree must therefore be reversed.

It has been suggested that the superior court regarded this as a proper case for a contribution, but did not think the petition adapted to such a remedy. We are inclined to think that if this was a case for contribution the bill should not have been dismissed. The petitioners have alleged and the court has found all the material facts on which any relief could be granted. They pray for an injunction and general relief. If we are right in our view of the law, they are entitled absolutely to an injunction. If it is a proper case for contribution, they are entitled to an injunction conditionally, that is, if they

will contribute their proportion of the first incumbrance. We do not see why such a decree could not be passed on the bill and pleadings, and the finding of the court, as the papers now stand. If the facts found are not specific enough to enable the court to ascertain the exact amount which the petitioners ought to pay, an opportunity should have been given, unless there was some reason to the contrary which does not appear, for further proof. If persons whose interests would be affected are not made parties they should have been summoned in, as this is no ground for dismissing a case. *New London Bank v. Lee*, 11 Conn., 112.

The superior court may have been influenced by the decision in the case of *Osborn v. Carr*, 12 Conn., 195. The facts in that case are complicated, and are liable to be misunderstood. All that have a bearing on the present question are the following:—Goodyear mortgaged some land in Waterbury to the Phœnix Bank to secure certain liabilities. He afterwards mortgaged a piece of land in New Haven to secure the same liabilities. It does not appear from the report of the case that this last deed referred to the other. He then mortgaged some of the land in Waterbury to Carr, and subsequently that in New Haven to De Forest & Co. All the conveyances were for value, and were recorded without actual notice of the others. Carr sought to throw the bank mortgage upon the land in New Haven, on the ground that his deed had priority of time. This the court refused to do, but ordered a contribution. It does not seem to have been as well understood then as it is now, that the record of a deed is no general notice to those of the public who have no interest and who are seeking no interest in the property deeded. In answer to the claim that De Forest & Co. in New Haven had constructive notice of the deed to Carr of the land in Waterbury, Huntington, J., who gives the opinion of the court, says: "We are asked to extend the doctrine of such notice to other lands in other towns. So to extend it would be unjust and inexpedient." If, as we have reason to suppose, De Forest & Co. had no notice by the records in New Haven that the land in Waterbury had been previously mortgaged to secure the same debt to the bank, Carr

took a deed of the land in Waterbury supposing that that land alone was incumbered with the bank debt, and De Forest & Co. took a deed of the land in New Haven supposing that that alone was charged with the mortgage. The court very properly under these circumstances held that the fact that Carr took his deed of the land in Waterbury first, gave him no such priority over De Forest & Co. as would enable him to throw off the bank mortgage from his land upon the land in New Haven. The mortgagees had taken their deeds respectively, without notice actual or constructive, and without the knowledge of such facts as would lead them to discover that the other had acquired prior equitable rights. If in that case the pieces of land contained in the bank mortgage had lain in the same town, it may fairly be inferred from the language of Huntington, J., that the court would have taken the same ground which we take in this case. He says (page 207:) "It is only because the mortgages to Carr and De Forest & Co. are distinct and separate and of distinct pieces of land in different towns, that De Forest & Co., when they took their mortgage, are to be considered as acting *bona fide* and not chargeable with such notice as will prevent them from having an equity in their mortgage equal to Carr's equity in his." In other portions of his opinion the language of the learned judge is calculated to give an erroneous impression, for he repeatedly speaks of De Forest & Co. as having constructive notice of Carr's deed, while at the same time one leading object of the opinion is to show that they ought not to be affected by it. It is difficult to conceive of a notice which will not affect a party charged with it, where any kind of notice will avail; and the correct view of such a state of things is, that there is no notice actual or constructive. We have discovered nothing in the case of *Osborn* v. *Carr*, when carefully examined, inconsistent with our present decision.

The judgment of the superior court must be reversed.

In this opinion the other judges concurred.