By the Court.
Bosworth, J.
The appeal brings up for review decisions of the judge at the trial, his refusals to charge as requested, and the exception taken to the charge made. If *545 it be assumed that on the facts proved, the defendants were entitled to a deduction from the amount of rent stipulated, still the judge correctly refused to charge as first requested, that no action would lie for the amount justly owing, until the sum to be deducted was fixed and liquidated by the comptroller and the finance committee of both boards of the common council.
The only case for which it is provided that any deduction to be made shall be so ascertained, is that of the plaintiffs setting apart to their use, during the continuance of the lease, “ any or all such wharves, docks, piers, or slips within the district ” in which the demised premises were situate. The lease provided that it should be the duty of the comptroller to notify the defendants, in writing, when any part of such district was to be taken. It does not appear that any such notice was given, or that any wharf, dock, pier, or slip, or any part of either, was, in fact, set apart to the use of the corporation. And no request was made to have it submitted to the jury as a question of fact, whether any portion of the district had been so set apart. To give to the request made any point, the judge, as a part of the request, should have been desired to have submitted such question of fact, and to have instructed the jury if they found the fact to exist, then that no action would lie, until the deduction had been fixed and liquidated as provided in the lease. And there should have been sufficient evidence of such a fact, to justify the jury in finding it to exist before such a proposition could be raised for consideration. The request assumes a fact to exi£t, not appearing by the bill of exceptions, and whether the request was a proper one or not, in case the fact assumed had existed, the form in which it was presented justified the judge in refusing to charge in conformity with it.
The defendants also requested the judge to charge the jury, “ that the taking and using the pier at the foot of Watts street, was an eviction, and that the defendants were entitled to a verdict.” The judge refused so to charge, and the defendants’ counsel excepted.
The evidence was not such as to prove incontestably a total or partial eviction by the plaintiffs, and in the absence of such evidence, it would be error to charge that, as matter of law, the plaintiffs had done that which amounted to an eviction, and *546 therefore the defendants were entitled to a verdict. The most that could have been justly required by the defendants was, an instruction to the jury, that if they were satisfied that the plaintiffs had wrongfully taken, and so used the end of the pier at the foot of Watts street, as to virtually and practically prevent the' defendants from using it for the purposes demised, then such taking and use amounted in law to a practical eviction, and would exonerate the defendants from all liability to pay rent even for the part, of which they retained the enjoyment: the defendants were not entitled to an instruction in such terms as they requested it should be given, and there was no error in refusing to make it.
The third request assumes that there was proof of such a use by the plaintiffs, of the pier at the foot of Watts street, as wrongfully deprived the lessee of the full enjoyment of the premises demised, and as matter' of law entitled the lessee to an abatement of rent, and that the proof of such use was so clear that a verdict to the contrary would be set aside as against evidence. Unless there was such proof, the judge correctly refused to charge as requested. The lease reserved to the plaintiffs “ the end of the pier at the foot of Watts street as a place of depositing manure from the 5th of December, (then) next to the 15th of April, following ; and further (declares) that no demand shall be made, nor any compensation received (by the lessee) for the occupation of the top or surface of any of the ■ public wharves or piers for any purpose whatever ; and also, that no wharfage is to be charged or demanded (by the lessee) for manure or coal-ash boats.”
There is no just ground of pretending that the evidence established, that the end of this pier had been used by the plaintiffs as a place of “ depositing manure,” at any other period during the lease, than that authorized by it. The evidence tended to show that it was almost constantly used from the commencement of the lease to the 5th of December following, as a place of dumping coal ashes, and rubbish not fit for manure, to be carried thence in boats, at the time steadily and actively employed in that business. That vessels liable to pay wharfage were prevented from coming alongside of the end of this pier, by such use of it. If the boats taking off rubbish took that *547 which is not described by the words “ manure, or coal ashes" as used in the lease, they were liable to pay wharfage, and the lessee cannot complain that dumping it on the end of the pier to be taken off by boats as fast as it could be reasonably carried away, was a violation by the plaintiffs, of the rights granted by the lease; any and all boats employed in the business, might lawfully be loaded at the end of this pier, with manure, coal ashes, or rubbish, and the plaintiffs might lawfully authorize it to be taken thei e, to be put on board of such boats. The terms of the lease contemplate that boats would take coal ashes from the end of this pier, and of course would fasten to it to be loaded, and expressly provide that the lessee should not demand nor collect wharfage from them, nor make any charge for the occupation of the top surface of the pier, for any purpose whatever.
The appellant’s fourth subdivision, of his third printed point on the argument of this appeal, is that, “ the boats that took away the rubbish, fyc., were not free of wharfage, they were not coal-ash boats, but rubbish boats, the majority of stuff taken away on them being other than coal ashes.”
If this proposition be well taken, then it follows that the largest part of the business done by boats coming to the end of this pier, was done by boats actively employed, and subject to wharfage. If it was not collected, it was the defendant’s fault.
It also follows that the minor part of the articles dumped at the end of the pier, by the authority of the superintendent of streets, was coal ashes, and as it was lawful for the plaintiffs, as between them and the lessee, to allow this to be done, and as-allowing it to be done did not prevent other boats liable to pay wharfage, from coming to the pier, it cannot be said that as matter of law, upon the evidence given, there was such a taking and use of the end of the pier, by the plaintiffs, as entitle the defendants to a “ pro raid deduction of rent.”
The judge submitted to the jury the question whether the plaintiffs had made any unnecessary use of the pier, and charged them that if they should find there had been any unnecessary use, they might make such deduction as they should think reasonable. The jury found there had been no unnecessary use.. *548 Such, at least, is the just inference from their verdict, as they made no deduction.
It is not so obvious what was intended or understood, at the time, to have been meant by “ any unnecessary use of the pier by the plaintiffs.” If it was meant to thereby submit the .question, whether the plaintiffs had allowed the coal, ashes, and rubbish to be dumped on the pier in greater quantities than had been customary, or faster than it could have been expected that it would be removed, and thus to be unmeasurably accumulated, so as unnecessarily to interfere with the plaintiffs’ right and opportunity to earn wharfage, I do not see that the charge made was prejudicial to the defendants. If it was intended and understood to be a direction that if the plaintiffs had made or allowed more use of it than was necessary to secure a removal from the streets of the coal-ashes and rubbish, which are constantly accumulating and required to be carried off, a reasonable deduction for that cause should be made, there was no error in it to the prejudice of the defendants. Those who contracted for the coal-ashes and rubbish, or to remove them from the city, had a right to carry them on this pier, and there place them in boats, to be thence taken away. The boats that carried rubbish, for aught that appears, were liable to pay wharfage, and if the defendants failed to collect it, it is their fault. Those who took off manure or coal-ashes, were, by the terms of the lease, exempt from wharfage. It is conceded that most of the boats were engaged in carrying off rubbish, and that the great bulk of matter dumped at the end of the pier was neither manure nor coal-ashes, but rubbish. If the boats taking this away were so frequently coming to the pier, as to preclude other boats from fastening to it, then it follows that the use of the pier, which for a time was almost exclusive, was one which furnished, for months, constant occupation to boats not exempted from the payment of wharfage. Those taking away rubbish had as perfect a right to use the surface of the pier, and have their boats alongside of it, as those transporting other freight. There is nothing to show that the wharfage of the rubbish boats was less than would have accrued from other boats, had the pier been at all times unobstructed to their approach.
*549 The charge, as made, was excepted to, but for what reason, the bill of exceptions does not disclose. Whether the fact, on the finding of which the jury were directed to make a deduction, would or would not authorize one to be made, the lessee cannot complain that the jury were instructed it would. If it would, the charge to that extent was correct; if it would not, then it was more favorable to him than that aspect of the case warranted. If it was not full enough, it was his own fault that he did not request such other, or more specific instruction, as the evidence given justified him in demanding. The judge correctly refused to charge as requested, and the part of the charge excepted to did not exclude from the consideration and government of the jury, the application of any principle of law to the evidence, on which the defendant can insist upon any right to a deduction from the stipulated rent.
The only other exception presented by the bill, is one to the ruling of the judge, excluding evidence to show, “ that the lease in question was sold at public auction ; that at that time, William Radford was one of the aldermen of the city of New York, and chairman of the finance committee ; that he was present at the sale; that both he and the auctioneer represented publicly at the sale, that the plaintiffs would extend the pier at the foot of Vestry street three hundred feet, and that, in consequence of such statement, the defendant Price, who had ceased bidding, bid an additional sum of $1500 for said lease ; that although the plaintiffs, on the 8th of May, 1847, passed an ordinance for the extension of said pier, said three hundred feet, yet they did not, and would not, although requested by the defendant Price, at any time during the term of said lease make said extension.”
It was doubtless intended by this offer, to raise the question, whether it is competent for a lessee, in an action against him for rent, to show that he was induced to agree to pay a higher rent by reason of assurances and representations, made at the time of the letting, on which he relied, that improvements would be made on the demised premises during the term, which would render their enjoyment more valuable to the tenant, and that such improvements were not made during the continuance of the lease, as the offer embraces.
The answer does not pretend to as much. It avers that the *550 lease was sold at public auction, and admits that the stipulated rent was agreed to be paid, “ in consideration of the said lease and its covenants,” but also avers, that at the time of the sale the plaintiffs did state and promise, and at several times afterwards, that, in consideration of the amount of rent agreed to be paid, they would extend a certain pier in said district, No. 3 of public docks and slips, part of the demised premises, which they have wholly refused to do, to the damage of the defendants of $5000. The answer does not aver when, or to what length, the extension was to be made, or that the defendant was induced, by the alleged promise, to take the lease, or .pay a higher rent for the demised premises. So far as it seeks to incorporate a eotemporaneous promise into the lease, it seeks to vary its terms and legal effect by parol. So far as it seeks to set up a subsequent promise, it presents one made by parol and without consideration.
The lease is an instrument apparently perfect in itself, and purports to contain the agreement of each party. There are no ambiguities in the terms of the lease, requiring explanations to make it intelligible. In such a case, it cannot be shown that there was a promise of either party different from, or in addition to those contained in the executed contract.
The cases cited by the- defendants, from 2d Cowen & Hill’s Notes, 1473, where parol proof was allowed, were cases of agreements imperfect on their face, or as in 3 Hill, 171, Batterman v. Pierce, contained only the promises of one party. If the matter offered to be proved, had been contained in the lease, and a covenant to extend the pier during its continuance had formed part of the consideration to pay the amount of rent agreed upon, then the defendants might have claimed a deduction, by reason of the non-performance.
No fraud is imputed to the plaintiffs, either in the answer or proof offered, nor is it pretended that the defendant, Price, would not have taken the lease, if the alleged promise, or assurance, had not been made. There is no pretence of any fraud in its execution, nor that its terms and provisions, and the force and effect of them were not perfectly well understood by the defendants, at the time it was executed ; the evidence offered, in any aspect in which it could be presented, was inadmissible, *551 and was properly excluded. A new trial must be denied, and the judgment appealed from, affirmed, with costs.