WILLIAM M. WILSON et al., Respondents, *v.* ANN MARIA DEEN, Appellant.

Where a lease is in writing, the rights and duties of the parties depend upon the terms or legal intendment of the lease itself, as it is conclusively presumed that the whole engagement is embraced therein.

The rule is the same at equity as at common law; and, in the absence of proof of fraud or mistake, the contract cannot be controlled by evidence that it was executed on the faith of a cotemporaneous or preceding oral stipulation not embraced in it; nor can it be set aside on the ground that such oral stipulation has not been performed.

Defendant executed a lease, under seal, to plaintiff, of a dwelling-house in the city of New York, with the furniture therein, a schedule whereof was to be made and attached to the lease upon the lessee taking possession. In an action to cancel the lease it appeared that, in the negotiations prior to its execution, defendant agreed to supply certain deficiencies in the furniture and to have the house completely furnished by the beginning of the term. The lease contained no covenant as to additions to the furniture; this was known to the lessee when she signed it; defendant then again promised to complete the furniture, and the lessee, upon being asked if she was willing to sign, upon the faith of defendant's promise, answered that she was, and it was thereupon signed by all the parties, in duplicate, the lessor and lessee each taking one. Defendant did not fulfill her promise and the lessee thereupon refused to accept, and never took, possession. *Held,* that these facts did not bring the case within the jurisdiction of a court of equity to reform or cancel the instrument; and that the provision as to a schedule of the furniture afforded no room for the implication that other furniture was to be supplied, or that the lease was incomplete or was not to take effect until the schedule was attached.

*It seems,* that if the oral agreement could be held collateral to the lease and not merged in it, plaintiff's remedy would be simply an action for damages for a breach of that agreement; the validity and effect of the lease could not be made to depend upon its performance.

*Gates* v. *Green* (4 Paige, 355); *Wood* v. *Hubbell* (10 N. Y., 479), distinguished.

(Argued April 9, 1878; decided November 12, 1878.)

APPEAL from judgment of the General Term of the Supreme Court, in the first judicial department, affirming a judgment in favor of plaintiff, entered upon a decision of the court on trial, without a jury.

The nature of the action and the facts are set forth sufficiently in the opinion.

*Samuel Hand,* for appellant. The parol promises made before the execution of the lease are merged in it and cannot be heard to affect its validity. (*Clive* v. *Willoughby,* 7 Hill, 83; *Speckels* v. *Sax,* 1 E. D. Smith, 253; *Johnson* v. *Oppenheim,* 55 N. Y., 280; *Thorpe* v. *Sughi,* 55 Ala., 530; *Brownell* v. *Haskell,* 22 Pick., 310; *Thorpe* v. *Ross,* 4 Keyes, *Payne* v. *Ladue,* 1 Hill, 116; *Erwin* v. *Saunders,* 1 Cow., 249; *Jarvis* v. *Palmer,* 11 Paige, 650.) Promises though not performed are not misrepresentations within the legal meaning of that word. (Kerr on Fraud and Mistake, 82.) If defendant had failed to keep her promise as to supplying deficiencies in the furniture this would not be ground for a complete cancellation of the lease. (*Tibbits* v. *Percy,* 24 Barb., 39; *Etheridge* v. *Osborn,* 12 Wend., 529; *McCoy* v. *Hill,* 2 Litt. [Ky.], 372; *Hart* v. *Windsor,* 12 M. & W., 5.)

*B. C. Chetwood,* for respondents. Fraudulent representations will vitiate any contract. (Story's Eq., § 192; *Wilson* v. *Force,* 6 J. R., 110; *Erie R. Co.* v. *D., L. and W. R. R. Co.,* 6 C. E. Green [N. J.], 283; *State B'k* v. *Holcomb,* 7 Halst. [N. J.], 191; there was a failure of consideration. (*Dyett* v. *Pendleton,* 8 Cow., 727.)

RAPALLO, J. This action was brought by a lessee and her surety, against the lessor, to obtain the cancellation of the lease. The lease was executed by all the parties, in duplicate, on the 29th of October, 1873, and demised "the house known as number four, East Thirtieth street, in the city of New York, with the furniture therein, a schedule of which is to be made in duplicate upon the party of the second part taking possession of the premises, and to be annexed to this lease, to be used as a dwelling-house" for the term of two years and ten months from the 1st of November, 1873, at the rent of $450 per month. It does not appear in the findings or evidence that any condition was attached to the delivery of the lease, but that, at the time of its execution, each party took one of the counterparts.

The facts found, ·upon which the court below decreed a cancellation of the lease, were, that the lessee applied to the lessor to hire the house furnished, for the purpose of taking boarders. That, as a part of the contract of letting, the lessor agreed that certain deficiencies in furniture should be made up and the house completely furnished on the first of November, except one room, and that the lease was executed in pursuance of that agreement. That, at the time of its execution, the lessor was notified that the lessee intended to use the house and furniture for a boarding-house, and to occupy the same, as such, on the first of November, and had no means to supply deficiencies in the furniture. That there were great deficiencies therein, of which the defendant was notified, and which she promised to supply, by the first of November, but although often requested, she never did supply them, and that, after waiting until the seventh of November, the lessee refused to accept the house, and returned one of the duplicates of the lease to the defendant. And that the lessee never took possession of the premises, and no schedule of the furniture was ever annexed to the lease. Upon these facts, the court found, as conclusions of law, that there was a failure on the part of the defendant to furnish the consideration for the agreement of letting, that the lease never went into effect, that the supplying of the deficiencies in the furniture was a condition precedent, without performance of which the lease did not take effect, and that being null and void, it should be delivered up and cancelled, and that the lessor, having made certain promises, at the time of signing the lease, as an inducement to such signing, which were not performed by her, and the performance of which was not waived, the lease so signed was void. The deficiencies in the furniture appear, on reference to the evidence, to be somewhat exaggerated in the findings, and to have been comparatively trifling, the most important ones having been supplied; but the evidence sustains the finding that there were some deficiencies, and the conclusions of law adopted by the court must therefore be examined.

We think it impossible to sustain these conclusions without disregarding the established rule of law, that a written contract merges all prior and contemporaneous negotiations and oral promises, in reference to the same subject, and that when the terms of a lease are in writing, the rights and duties of the parties depend upon the terms or legal intendment of the lease itself, or as otherwise expressed, that it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, are embraced in the writing. This rule has been repeatedly applied to cases like the present, where tenants have set up oral agreements or promises alleged to have been made by the landlord, at the time of, or before, the execution of the lease, and as an inducement thereto. The alleged promises have, in most of the cases, been to put the premises in repair, but they have uniformly been held to have been merged in the lease. (*Cleves* v. *Willoughby*, 7 Hill, 83; *Speckels* v. *Sax*, 1 E. D. Smith, 253; *Howard* v. *Thomas*, 12 Ohio State R., 201; *Brigham* v. *Rogers*, 17 Mass., 571. See, also, *Renard* v. *Sampson*, 12 N. Y., 561; *Ruse* v. *Mut. Ben. Life Ins. Co.*, 23 id., 516; *Johnson* v. *Oppenheim*, 55 id., 293.)

The rule is the same in equity as at common law, and although, in equity, a written contract may be set aside or reformed, for fraud or mistake, it cannot be controlled by evidence that it was executed on the faith of a cotemporaneous or preceding oral stipulation not embraced in it, nor can it be set aside on the ground that such oral stipulation has not been performed, unless it is also shown that the stipulation has been omitted by mistake. We have examined the case with care, for the purpose of ascertaining whether it contains the necessary facts to enable the court to grant relief, under its power to reform or set aside written instruments for fraud or mistake, but we have failed to find any evidence of mistake or fraud which would justify the exercise of that jurisdiction. The testimony shows that the plaintiffs read the lease and knew its contents, and knew that it contained no covenant to put in more furniture than

was already in the house, and knew that the furniture, which, they say, the defendant had promised to put in, had not all been put in. They testify that when the lease was signed the defendant again promised to complete the furniture, and the surety asked the lessee whether she was willing to sign the lease, on the faith of the defendant's promise to put in the furniture, and she said she was, and it was then signed by all the parties, each taking one of the counterparts. These facts do not bring the case within the jurisdiction of a court of equity to reform or cancel the instrument. That jurisdiction is exercised under the head of fraud or mistake, and the mistake or fraud must be shown, as well as the agreement. (*Stevens* v. *Cooper*, 1 Johns. Ch., 425; *Lord Imham* v. *Child*, 1 Bro. Ch. R., 92 ; *Lord Portmore* v. *Morris*, 2 id., 219 ; *Dwight* v. *Pomeroy*, 17 Mass., 303; *Turner* v. *Lucas' Exrs.*, 13 Gratt., 705.) Where there is no fraud or mistake in the preparation of the instrument, and it appears that the party knew its effect and purport, there is no ground for the reform of the contract, and a cotemporaneous promise on the faith of which he signed, cannot be given in evidence to control it.

A different rule has long prevailed in Pennsylvania, and it has there been held that everything that passes at the time of the execution of a deed, is admissible in evidence, and that although there be no fraud or mistake in the execution of the instrument, yet if its execution was obtained by means of a cotemporaneous verbal stipulation, this may be given in evidence, because it would be a fraud to enforce the instrument without performing the stipulation. It was thus held, in *Christ* v. *Diffenbach* (1 Serg. & Rawle, 464), that a verbal stipulation, made at the time of the execution of a lease, should be enforced ; and see *Thompson* v. *White* (1 Dall., 424; *Oliver* v. *Oliver* (4 Rawle, 141). The cases declaring this doctrine are very numerous, and it has been carried so far as to hold that, in an action against a surety upon a bond, he may, as a defense, show that he executed it under a verbal declaration by the obligee that his signing was a mere matter

of form, and that he should never be called upon for payment. It is unnecessary to say that, in this State, such a doctrine has never been adopted, and that the current of our authorities sustains the proposition that, both at law and in equity, one who sets his hand and seal to a written instrument, knowing its contents, cannot be permitted to set up that he did so in reliance upon some verbal stipulation, made at the time, relating to the same subject, and qualifying or varying the instrument which he thus signs. The very purpose of the rule which excludes evidence of such declarations, is to avoid the uncertainties attendant upon such evidence, and equity will not set aside that important and well settled rule for the purpose of relieving a party against a risk, which, upon his own showing, if it be true, he has voluntarily incurred. It is only when through fraud or mistake a party has executed an instrument which he believes to be in accordance with the real agreement, but which is, in fact, different, that equity will relieve; and even then, the mistake, as well as the agreement, must be made out by clear proof: (*Nevius* v. *Dunlap*, 33 N. Y., 676; *Rider* v. *Powell*, 28 id., 310, 317). In *Gates* v. *Green* (4 Paige, 355), and *Wood* v. *Hubbell* (10 N. Y., 479), a lease was reformed by inserting a clause terminating it in case of the destruction of the buildings by fire; but in each of these cases it was proved that the clause had been agreed to be inserted, and had been omitted by mistake and the lessee had signed in ignorance of the omission. No such fact exists in the present case.

The judgment appealed from does not proceed upon the theory of reforming the lease, or canceling it, on the ground of mistake, but of giving effect to the cotemporaneous oral promise as such. It is not claimed that there was any mistake as to the contents of the lease. It was carefully read by the lessee before execution, and there is no suggestion even that it was contemplated that it should contain any stipulation as to adding furniture or supplying deficiencies. The plaintiff, knowing the contents of the lease, consented, according to her own testimony, to execute it as it was, rely-

ing wholly upon the oral promise of the lessor to complete the furniture, which promise the lessor denies. The lease demised the house and the furniture therein. Its terms were clear and did not call for the supply of any other furniture than that then in the house. Neither did the provision that a schedule of such furniture should be made and attached to the lease, upon the tenant taking possession, afford any room for the implication that other furniture was to be introduced before she should take possession, or before the making of the schedule; nor that the lease was incomplete, or was not to take effect until such schedule should be attached. When she took possession, it must be under the lease, and it was not until then that the schedule was to be made. This schedule was merely a matter of convenience for both parties. By it the tenant would acknowledge the receipt of the furniture under the lease, and the articles would be identified, for the return of which she would be responsible. The lease was a complete instrument without it, and vested in the tenant a term of years in the land and the right to use the furniture in the house. This term must necessarily begin before the inventory was agreed to be made, and there was nothing in the lease making the performance of the stipulation as to the inventory a condition precedent to the lease taking effect. The landlord could not have withheld possession until the inventory should be attached, for it was only on the tenant taking possession that it was to be attached. If the lease was binding upon the lessor before that was done, it was equally binding upon the lessee. The lease appears from the evidence to have been delivered without any condition being attempted to be attached to the delivery, nor could any such condition well have been attached, as the interchange of the papers was directly between the parties. (*People* v. *Bostwick*, 32 N. Y., 448.) So far from the transaction being, in fact, treated as incomplete, not only was the lease delivered, but the first month's rent was paid. We can find nothing in the case but the often repeated attempt to obtain the benefit of alleged oral stipulations, relating to

a subject as to which a written agreement has been made, in which such stipulations are not contained.

Reference has not been made to a class of cases in which oral or parol agreements have been held to be collateral to a deed cotemporaneously executed, and not merged in it, for if the present case could be brought within the principle of those cases, it would not help the plaintiffs, as their only remedy would be an action for damages for the breach of the parol contract. The validity and effect of the deed could not be made to depend upon the performance of such collateral contract. To except from the rule that a deed cannot be controlled by cotemporaneous oral stipulations, cases in which such stipulations were an inducement to the execution of the writing, would be to abrogate the rule ; for in almost every contract, the undertakings of one party are a consideration for those of the other ; and to say that the writing shall not take effect unless the oral stipulation is performed, would produce even a more serious result than to enforce such oral stipulations. Writings would be of little value, as they could always be controlled by oral evidence of what was said by the parties at the time of their execution. We should be glad to terminate this litigation by affirming the judgment, if we could find any legal ground on which to sustain it ; but we are unable to do so. As is said by WOODRUFF, J., in *Speckels* v. *Sax* (1 E. D. Smith, 253), the rule is well settled, and though it may operate harshly in this instance, its propriety and wisdom in general cannot be questioned. That case was very analogous to this, and apparently presented strong equities. But there can be no more dangerous judicial experiment than to endeavor to sustain the supposed equities of a particular case, at the hazard of subverting an established and wholesome rule of law.

The judgment must be reversed, and a new trial ordered, costs to abide the event.

All concur.

Judgment reversed.