Hall, J.
The plaintiff and defendant executed two leases in writing which were duly delivered, by one of which plaintiff demised to defendant “ part of the first floor above the store in the building known as No. 37 W. 14th street in the city of New York, with the use (in common) of steam elevator (without attendance), steam heat and belt power, to the extent of and not to exceed one house, to be conveyed by a belt one inch wide.”
By the second lease, made some eighteen days afterwards, *886 plaintiff demised to defendant, tbat portion of tbe westerly side of store in the building known as No. 37 W. 14tli street in the city of New York, commencing at a point immediately adjoining the elevator which adjoins the front show window, and running thence northerly a space not to exceed eight feet in length and one foot in width, also privileged to place a settee adjoining said space, said settee to be used in common with the other tenants on the westerly side of said store, .... simply as a place to exhibit and show their samples and to induce sales, to be heated by steam, privilege to use elevator from said store to floor above.
The leases are separate and distinct, and made at different, times and each is a complete instrument in itself, containing all the usual covenants, and it is not claimed that defendant was induced to execute them through fraud or mistake.
This action is brought to recover rent for the months of November and December'1885, under said leases. The complaint, contains two separate causes of action, one upon each lease.
The defense was a constructive eviction of defendant by reason of plaintiff’s neglect and refusal to carry out the terms of the leases, and the terms of certain verbal agreements alleged to have been made both before and after the execution of the ■leases.
The defendant occupied the premises for the greater part of the month of November, and upon the trial admitted that it. owed the rent for that month and that a note had been offered for the same.
There was no claim that any of the covenants of the second lease had been broken except that it was claimed that°the two leases should be treated as one instrument, and that therefore the covenants of the first lease as well as the verbal stipulations-applied also to the second. •
Under these circumstances the court directed the jury in any event to find a verdict for plaintiff for the November rent under the first lease, and for both months under the second.
This direction was clearly right, the defendant had occupied, the premises under both leases during most of the month of November and the rent became due on the first of that month,, the rent accrued under the terms of the lease and not by reason of use and occupation, but aside from this it is too well settled, to be disputed, that a lessee cannot go on and occupy premises and then claim an eviction, and this is the only defense set up in the answer, no claim is made for damages as an offset to or reduction of the rent.
But defendant’s president admitted upon the trial that the-November rent was owing and that he had offered to pay it by a note, and in the face of this admission I fail to appreciate the force of defendant’s argument on that branch of the case..
*887 As to the December rent under tbe second lease, it is sufficient to say that there is no evidence to show a breach of any covenant of that lease which would amount to a complete or partial eviction from the premises thereby demised, and as the lease is a separate," complete instrument, entirely independent in its terms from the first lease, I can see no ground of defense, even if the evidence had been admitted to show the alleged verbal agreements ; they had no application to the premises demised under the second lease.
The other objections and exceptions in the case all pertain to the refusal to admit evidence to show conversations and verbal understandings between the parties prior to the execution of the leases, and an oral agreement claimed to have been made after the leases were delivered.
It is a thoroughly well settled and understood rule of law that the colloquium or conversation, forming the whole or part of the negotiations leading up to and culminating in the execution of an agreement in writing, cannot be given in evidence, to vary or contradict the writing, and indeed, were it otherwise, the very object of the writing would he defeated.
A contract, the terms of which have been agreed upon verbally, is reduced to writing for the purpose of avoiding the uncertainty and frailty of human memory or the falsehood or perversity of witnesses, and there is no exception to the rule above stated except in cases where the alleged verbal contract is collateral to and not inconsistent with the writing; or by reason of fraud or mistake some vital element of the verbal contract has been omitted from the writing.
The parties to a written contract have an opportunity of examining it before signing and if it fails to state the entire agreement or misstates any portion of it, it can he rejected. It is not claimed or assertedin the case at bar that defendant did not have a full opportunity to examine the leases before signing or that their execution was induced by fraud or mistake ; defendant was bound to know what the leases contained before signing them.
If the covenants complained of could be altered by parol, why not the covenant in regard to the rent or term ? I have made a very careful examination and study of all the cases in this state, which seem to form exceptions to the rule above stated, including those cited on the very elaborate and studious brief of the appellant, but I fail to find that any of them fit the facts in this case so as to bring it within any one of the exceptions to the general rule.
It has been decided by the highest court in tins state, in a case on all fours with the case at bar, that the written instrument cannot be varied or contradicted by prior or contemporaneous negotiations and oral promises, but that all such prom *888 ises and conversations are merged in the writing. Wilson v. Deen, 74 N. Y. 531.
.That was an action to set aside a written lease of a furnished bouse on the ground that, before the execution of the lease, the lessor had agreed orally, to supply deficiency in the furniture of the house, so that the house should be completely furnished, which the lessor failed to do.
At the trial the lessees proved these facts, against the objection of the defendant lessor, and the lease was set aside, but this decision was reversed by the court of appeals, and in a long and elaborate opinion by Rapaelo, J., the rules of law are clearly stated.
In that case the lessor knew that the house was to be .used as a boarding house and that the lessee had no means of supplying any deficiency in furniture, and the lease was made in express contemplation of these facts.
But the court says * It does not appear that any condition was attached to the delivery of the lease, but, at the time' of its execution each party took one of its counterparts.”
Again the court says, “ that the contract cannot be controlled by evidence that it was executed on the faith of contemporaneous or preceding oral stipulation not embraced in it ” in the absence of fraud or mistake.
The lessee in that case read the lease and knew its contents and knew that it did not contain the stipulation to supply the furniture, so it could not be claimed that there was any mistake.
The court says, that, whatever the doctrine in England or Pennsylvania, “ the current of authority in this state sustains the proposition that, both at law and in equity, one who sets his hand and seal to a written instrument, knowing its contents, cannot be permitted to set .up that he did so in reliance upon some verbal stipulation, made at the time, relating to the same subject, and qualifying or varying the instrument which, he signs. The very purpose of the rule which excludes evidence of such declarations is to avoid the uncertainties attendant upon such evidence and equity will not set aside that important and well settled rule for the purpose of relieving a party against a risk, which, upon his own showing, if it be true, he has voluntarily incurred.”
It will be noticed that in the case cited the lessee never went, into possession of the premises at all, whereas in the case at bar the defendant occupied the premises for six months.
This case has never been questioned, and is the law of this state to day; true, it is referred to in the opinion in Chapin v. Dobson 78 N. Y. 81., but is not doubted as good law, but is not an authority upon the facts of that case. See also, Speckels v. Sax, 1 E. D. Smith, 253.
*889 As regards tbe promises alleged to have been made after tbe lease bad been delivered the same general rule applies. Mott v. Richtmyer, 57 N. Y., 49-59.
But it was expressly stated on tbe trial wben this evidence was offered that it was not claimed that there was any new consideration for tbe promise and therefore it was inoperative. Coe v. Hobby, 72 N. Y. 141; Hastings v. Lovejoy, 2 N. E. Rep. 776.
In any event if there bad been a new collateral agreement made, founded upon a good consideration, a breach of such agreement would not amount to an eviction under tbe leases, although defendant might have an action for damages for breach of such new agreement.
The trial judge was therefore right in excluding the evidence as to oral stipulations or agreements.
The question as to whether there had been a substantial breach of any of the covenants of the first lease was properly submitted to the jury, under a proper and careful charge, and the verdict of the jury, sustained as it is, by sufficient evidence cannot be disturbed.
The judgment and order denying motion for a new trial must be affirmed with costs to respondent.
Hyatt and Ehkltch, JJ., concur.