HENRY J. S. HALL and Others, as Executors, etc., of WILLIAM H. HALL, Deceased, Respondents, *v.* RAFALA S. BESTON, Trading under the Name of R. S. BESTON & Co., Appellant.

*A written sealed lease — a prior parol promise by the landlord to make repairs is merged in it — a promise during the term to repair if the tenant would remain is without consideration.*

An oral agreement, made prior to the execution of a written lease, under seal, for five years, containing no covenant binding the landlord to repair, and appar- ently on its face embracing the entire understanding of the parties to it, by the terms of which oral agreement the landlord undertakes to make certain repairs during the term, must be deemed to have been merged in the lease, and cannot, in an action brought to recover rent due under the lease, in which the tenant sets up the breach of this oral agreement as a counterclaim or defense, be proved by the tenant as an independent collateral promise.

A promise by the landlord, made during the term and when the tenant threat- ened to remove from the premises, that if he would remain the landlord would make the repairs in question, is not enforcible, there being no consideration to support it.

APPEAL by the defendant, Rafala S. Beston, trading under the name of R. S. Beston & Co., from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 4th day of February, 1897, as of the 27th day of April, 1896, upon the decision of the court rendered after a trial at the New York Trial Term before the court without a jury.

*Isaac N. Miller,* for the appellant.

*John M. Bowers,* for the respondents.

INGRAHAM, J.:

The action was brought to recover the rent due by the defendant under a lease between the plaintiffs' testator and the defendant. The complaint alleged the making of the lease; that the defendant had not paid the rent for the months of May, June, July, August, September, October, November and December, 1895, aggregating $1,600, except the sum of $450, paid on account, leaving a balance of $1,150 due and unpaid. The answer admits the making of the lease; denies that the rent is unpaid, and alleges as a separate answer and defense, and by way of counterclaim, an agreement between the plaintiffs' testator and the defendant, in consideration of which the lease in the complaint was signed, whereby the plaintiffs' testator agreed to make certain repairs in the cellar and upon the roof, and to abate a nuisance occasioned by defective drainage of said cellar; that the plaintiffs' testator failed to carry out that agreement, and that thereupon the plaintiffs' testator broke the covenant in the lease contained that the lessee should have, hold and enjoy the said demised premises. The damage to the defendant in consequence of the failure to keep such agreement is alleged to be the sum of $5,000, and judgment is demanded against the plaintiffs for that amount. The plaintiffs' reply denied every allegation in the answer constituting a counterclaim. The case came on to be tried at a Trial Term of the court, a jury being waived and the case was thus tried before the court without a jury. The court found the making of the lease, the default in the payment of the rents and that the amount due was $1,150, and judgment was thereupon entered in favor of the plaintiffs for that amount, with costs.

The trial seems to have been somewhat informal. The making of the lease was admitted by the answer, and it was also proved by the subscribing witness. It is true he testified that he did not remember who signed the defendant's name to it, but he proved his own signature. The objection to the lease was that it was not identified — not that it was not sufficiently proved. The objection was clearly bad; and as no other objection was taken no other can be considered on appeal.

The husband of the defendant was called as a witness. He testified that he was the agent and attorney for the defendant, and was then asked as to the condition of the premises at the time of the lease. That was objected to. Counsel for the defendant then made an offer of proof, and in the absence of any other statement in the record it must be considered that this offer contained a statement of the facts which it was claimed would prove the defense set up in the answer. That offer was to prove that before the execution of the lease the lessor undertook and agreed to make the cellar water tight so that it would be available for the purposes for which the defendant desired it; that he attempted to do so and did not succeed; that the defendant notified the lessor that he considered the covenant and agreement broken and that she should move; that plaintiff then made a new contract with her, and agreed that if she would remain he would put the cellar in repair so that it should be available to her for the purposes for which she wanted it; that on these conditions she did so remain; that Mr. Hall again attempted to fix it repeatedly, but that the water continued to come into the cellar and filled it to such an extent that it was unavailable for the purposes for which the defendant wished it, and that by reason of this failure the defendant was greatly damaged and injured as stated in the answer. These were the only facts that the defendant offered to prove. Counsel for the defendant subsequently made the claim "that there was a defect in the construction of the building, and that these repairs were substantial and lasting and of a general nature, and that there was a covenant for quiet enjoyment which was broken, we not being able to use this at all." The court then asked the counsel for the defendant whether the statements which he alleged were made by the landlord were oral or in writing. Counsel replied that the statements were oral. The court then

asked whether the understanding had, after the lease was made, was founded on any new and independent consideration, or any consideration other than the promise of the tenant to remain. To that the counsel for the defendant said : " The promise of the tenant to remain ; he was about to remove." The Court : " That was the sole consideration ? " Counsel for the defendant : " Was the consideration." The court then said : " I will consider your offer. If I decide against you, the case is finished. If I decide in your favor, you will go on with your testimony to-morrow morning." To that statement of the court no objection was made, and counsel must be held to have acquiesced in this method of terminating the trial. The question for the court then, was whether the facts stated in the offer would prove either the defense or the counterclaim set up in the answer. The following statement then appears in the case : " The amount due on the lease is one thousand one hundred and fifty dollars, and the interest is forty-four dollars and forty-eight cents, making one thousand one hundred and ninety-four dollars and forty-eight cents." To that no objection was made by either of the counsel, and it must be held to be a conceded fact. Subsequently, and on the next morning, the court sustained the objection to the testimony offered, and to that decision of the court the defendant excepted. The sole question upon this appeal is whether the facts alleged in the offer would constitute the defense to the action or the counterclaim set up in the answer.

The lease is under seal, dated —— day of April, 1893. By it the landlord leased to the defendant the store No. 243 Greenwich street, in the city of New York, for the term of five years from the 1st day of May, 1893, at the yearly rent or sum of $2,000 for the first year and $2,400 per year for the remaining years, and the defendant covenanted to pay that rent and the charge for Croton water. There was no covenant in the lease that either party would make any repairs, but the defendant covenanted that she would quit and surrender the premises at the expiration of the term demised in as good state and condition as reasonable use and wear thereof would permit, damages by the elements excepted, and there was a covenant on behalf of the landlord of quiet enjoyment.

The court delivered an opinion upon sustaining the objection to the evidence offered, holding that the defects in the cellar, if such

there were, existed before the hiring, and that the tenant was aware of them, and, presumably, took the premises for better or worse; that the second promise was without consideration and unenforcible; that the prior negotiations were merged in the written instrument; that the rights and duties of the parties were to be determined by that instrument, and that this promise to repair, not contained in the lease, was not an independent collateral promise.

We think that the court was clearly right in the determination of this question for the reasons stated upon sustaining the objection to the evidence. It was not alleged in the answer, nor did the defendant offer to prove, that she did not actually occupy the premises during the term for which the rent was unpaid, nor that she ever surrendered or offered to surrender the leased premises. The answer alleges that she was unable to occupy the cellar, which was a comparatively unimportant part of the demised premises.

We think, therefore, upon the whole case, that the judgment appealed from should be affirmed for the reasons stated in the opinion of the trial judge,* with costs.

Van Brunt, P. J., Barrett, Rumsey and McLaughlin, JJ., concurred.

Judgment affirmed, with costs.

---

* McAdam, J.:

The executors of William H. Hall sue to recover rent due upon a sealed lease of premises, 243 Greenwich street, demised for five years, from May 1, 1893, at a specified rental. The defense is that the lease was signed in consideration of a promise by the testator to make certain permanent repairs to the cellar, and that during the term the promise was renewed. Both promises were oral. The only consideration alleged is the execution of the lease and the defendant's promise not to remove. The defects of the cellar, if such they were, existed before the hiring; the tenant was aware of them, and presumably took the premises for better or for worse. (*Bloomer* v. *Merrill*, 1 Daly, 485.) The second promise is clearly without consideration and unenforcible. (*Gottsberger* v. *Radway*, 2 Hilt. 342; *Speckels* v. *Sax*, 1 E. D. Smith, 253.) In legal contemplation the mutual provisions of the lease formed its only consideration. This brings us to the vital question whether what is alleged to have been said as to repairs prior to the execution of the lease was merged in it, or amounts to an independent collateral agreement, which, though oral, is provable without impairing the rule that written instruments, which apparently contain the entire agreement of the parties, are not to be varied or enlarged either in their terms or legal effect by oral evidence. The settled rule is that where, upon the inspection of a contract, it appears to contain

HENRY P. KIRKHAM, Appellant, *v.* THE BANK OF AMERICA,
Respondent.

*Payment of a draft — liability of a bank in collecting a draft for a customer — effect
of the acceptance, by its agent, of the drawee's draft upon a third person.*

Where the agent of a bank in which a draft has been deposited for collection
surrenders the draft to the drawee and accepts a draft for its amount, drawn by
the drawee upon a third person, the first-mentioned draft is thereby paid, the
presumption being that the drawee's draft was accepted in payment of the
draft received for collection; in any event, the collecting bank is bound either
to return to its customer the draft received for collection, properly protested,
so as to charge the drawer, or to pay him the money.

PATTERSON, J., dissented.

A bank which receives from a customer a draft for collection is liable for a loss
occasioned by the acts of its correspondents or other agents selected by it to
effect the collection.

The effect of a collecting bank in such a case having notified its customer that a
draft left with it for collection was paid, and having credited the customer in
its account with him with the amount thereof, and for a long time thereafter
having acted upon the theory that the customer was entitled to regard the
draft as paid, considered.

APPEAL by the plaintiff, Henry P. Kirkham, from a judgment of
the Supreme Court in favor of the defendant, entered in the office
of the clerk of the county of New York on the 21st day of June,
1897, upon the decision of the court rendered after a trial at the
New York Special Term.

the entire engagement of the parties, and to define the object and measure the
extent of such engagement, it constitutes and is presumed to contain the whole
contract. (*Eighmie* v. *Taylor*, 98 N. Y. 288; *Engelhorn* v. *Reitlinger*, 122 id. 76.)
The court, in the case last cited, said: "All prior and contemporaneous nego-
tiations and oral promises in reference to the same subject are merged in the
written contract, and the rights and duties of the parties are to be determined by
that instrument." The principle has been frequently applied to leases and other
writings. (*Wilson* v. *Deen*, 74 N. Y. 533 ; cited and approved in *House* v. *Walch*,
144 id. 418; *Marsh* v. *McNair*, 99 id. 174; *Thomas* v. *Scutt*, 127 id. 133.) To hold
that a promise to repair, not contained in a lease, is an independent collateral
agreement, would not only deprive the plaintiffs of all protection of the rule
stated, but impair its object and put landlords almost at the mercy of tenants.
The lessor, careful to reduce his agreement to writing, has since departed this
life, and there are no means of contradicting any evidence of oral promises which
the defendant may offer. If there is any efficacy in the old rule it ought to be

*Ernest Luce,* for the appellant.

*Charles E. Rushmore,* for the respondent.

INGRAHAM, J. :

The complaint in this action alleges that during and previous to the month of November, 1890, plaintiff was a depositor of the defendant; that on or about the 25th day of October, 1890, one George K. Kirkham, the plaintiff's partner in business, received from one Blanchard a sight draft for the sum of $3,120, drawn by said Blanchard, as president of a corporation known as the Interstate Investment Company, upon the Bank of South Hutchinson, of South Hutchinson, Kans., a financial institution doing a general banking business; that the said draft was indorsed payable to this plaintiff, or to his order, and delivered to him by said George K. Kirkham, and deposited by plaintiff with the defendant for collection, and the amount of said draft was thereupon entered by the defendant in the plaintiff's pass book as a draft deposited for collection; that thereupon the defendant forwarded the said draft to its agent and correspondent, the Boatmen's Bank of St. Louis, an incorporated financial institution doing a general banking business at St. Louis, Mo., which in turn forwarded the draft to its agent and correspondent, the First National Bank of Hutchinson, Kans.; that the said draft was presented by the said First National Bank of Hutchinson to the Bank of South Hutchinson, whereon it was drawn, and was accepted by it; that thereupon the said First National Bank of

---

enforced to protect the estate from dangers resulting from unreliability of memory of conversations long since passed. To bring a case within the rule admitting parol evidence to complete an entire agreement of which a writing is only a part the writing must appear on inspection to be an incomplete contract. (*Case* v. *Phœnix B. Co.,* 134 N. Y. 78; *Thomas* v. *Scutt, supra.*) The reverse of that appears here. The obligation of a landlord to repair rests solely upon express covenant. (*Witty* v. *Matthews,* 52 N. Y. 512.) The lease, which is one the statute requires to be in writing, appears to have been carefully drawn, and was executed with every formality. It contains mutual covenants, and there is no apparent reason why every other promise should have been put in and this one left out. In *The Mayor* v. *Price* (5 Sandf. 542) the tenant undertook in like manner to prove that the landlord, contemporaneously with the execution of the lease, agreed to make certain repairs, and the court (at p. 550) said: "The lease is an instrument apparently perfect in itself, and purports to contain the agreement of each party. There are no ambiguities in the terms of the lease, requiring explanations to make it

intelligible. In such a case it cannot be shown that there was a promise of either party different from or in addition to those contained in the executed contract." To the same effect are *Mayer* v. *Moller* (1 Hilt. 491); *Howard* v. *Thomas* (12 Ohio St. 201). In *Post* v. *Vetter* (2 E. D. Smith, 248) the same principle is reiterated, with the qualification that such a promise made during the term, founded on a new consideration, may be proved. The cases relied upon by the defendant are distinguishable either by the fact that they refer to agreements not required to be in writing or to a different state of facts. In *Chapin* v. *Dobson* (78 N. Y. 74) the plaintiff was allowed to prove a warranty on a sale as collateral to the principal contract. In *Clenighan* v. *McFarland* (11 N. Y. Supp. 719) the oral agreement was to put the premises in repair before the commencement of the term, and as a condition precedent to the operation of the lease. So, in *Mann* v. *Nunn* (43 L. J. C. L. [N. S.] 241), the agreement was to put an unfinished house in a state fit for habitation before the commencement of the term. In the *Clenighan* case the court recognizes the distinction by holding that, if the agreement had been to make repairs during the term, proof of the oral agreement would have been inadmissible, and so in the other cases the promise held to be collateral was to do acts antecedent to the operation of the demise. When the statute requires the terms of a contract to be in writing, neither party will be permitted to show that it was other or different from what is expressed. (*Routledge* v. *Worthington Co.*, 119 N. Y. 592.) It is a task to reconcile the cases and get at their distinguishing features, for the question of what constitutes a collateral undertaking is necessarily close, and requires the greatest care in enforcing one rule that another equally important to the administration of justice may not be impaired. If the answer had alleged that the repairs were to be made antecedent to the term, and that their performance had been postponed at the request of the landlord until after it had commenced, there might have been force in the defendant's contention that the promise was collateral to the lease. For these reasons the oral evidence was properly excluded, and the plaintiffs are entitled to judgment for $1,194.48.