# AMERICAN RAILROAD COMPANY OF PORTO RICO

*v.*

# PONCE & GUAYAMA RAILROAD COMPANY ET AL.

San Juan, Equity, No. 1005.

### REFORMATION OF CONTRACT.

Equity Practice—Answer.

    1. A sworn answer is evidence for the defendant unless overcome by the testimony of two witnesses or one corroborated by circumstances.

Reformation of Contract—Parol Evidence.

    2. Parol evidence may be introduced to vary a contract in a suit for reformation, but it must be clear.

Contract—Intention.

    3. The Statute of Frauds does not apply in Porto Rico. Local law lays stress upon the intention of the parties the same as the common law.

Contract—Acts of Parties.

    4. Contemporaneous construction by acts of the parties is of the highest value.

Executed Contract—Renewal.

    5. Where it is shown that a written contract was varied by mutual consent and the second year was renewed as continuing the original agreement without change, the variation of the first year is not adopted for the second.

Opinion filed January 20, 1920.

## Statement of Facts.

The facts of this case need not be stated in detail, as they

NOTE.—On admissibility of parol evidence to vary, add to, or alter a written contract, see note in 17 L.R.A. 270.

American R. Co. v. Ponce & G. R. Co.

have been before the court for some years in different branches of the litigation. 8 Porto Rico Fed. Rep. 345–350. In a general way it may be stated the bill filed February 25, 1918, claims that the defendants, the Ponce & Guayama Railroad Company and the Central Fortuna, had properties on the south coast of Porto Rico, lying east of Ponce, and each for itself operated a narrow gauge railroad, mainly for the purpose of hauling its cane, but which by local law had also to be a common carrier of freight and passengers. On the other hand, the American Railroad Company operated the longest railroad on the Island, extending from San Juan·along·the northern, western, and southern coasts to Ponce, and three kilometers beyond. After considerable negotiation, for mutual convenience these three corporations on September 7, 1910, agreed in writing upon a contract whereby the American Railroad of Porto Rico was to perform the public carrier duties of the two other corporations through their properties up to the town of Guayama, the evidence showing that the two corporations designed to continue and did continue their local operations of hauling cane to their respective centrals. The contract was for one year, and provided that there should be a certain compensation for freight, another for passenger service, and there is a provision also·for "mixed trains." It is contended on behalf of the plaintiff that less than ten days after the original contract the parties got together at Ponce and orally modified the written contract to the extent of providing that there should be only a mixed train, that is, freight and passenger combined, so that the tracks should be the freer for the individual cane service of the two centrals, but that the plaintiff nevertheless should be paid at the rate allowed for separate passenger and freight service,

respectively. The practical difference was the allowance of 50 cents per train per kilometer, amounting to $20,622.72 for the first year. Monthly reports and accounts were rendered regularly by the plaintiff to the defendants on this new basis, and the amount was either paid to the plaintiff or otherwise allowed in accounts between the parties.

The contention of the plaintiff, which seems to be substantiated by evidence, is that this view of the case was acted upon by the parties, and settlements made accordingly during all the year the contract was to run. The contract, whatever it was, was on September 28, 1911, renewed for the second year by reference to the date of the original contract, and this was reported to the public authorities. About that time there came down a new manager of the defendant railroad company, one Farnum, who contested this view of the contract for the past and refused to accept it for the future, contending that the American Railroad Company had received too much for the first year. That railroad declined to repay, with the result of continuous litigation ever since. The defendant Ponce & Guayama Railroad Company first sued in equity for an accounting for money paid by it or retained by the American Railroad Company under the American Railroad Company's construction of the contract. In this the American Railroad Company was successful as to the first year's contract, the jury finding a verdict for the defendant except as to a small admitted amount. The contrary result followed in a similar suit for the amount for the second year, the jury finding for the plaintiff practically under instructions from the court. The difference in the two cases was that the jury were for the first year instructed to take into account the acts of the parties, and upon this they seem to have

come to the conclusion that the parties, by their acts, considered the mixed train service all that was required under the contract. On the other hand, for the second year there was no such agreed construction of the contract, for Mr. Farnum had become the manager of the Ponce & Guayama Railroad Company, and expressly denied that construction. The renewal, therefore, was held to be a renewal of the original terms of the contract of September 7, 1910.

The suit at bar accepts the previous litigation as final at law, but seeks to reform the contracts for 1910 and 1911 so as to make them read as providing for mixed service at the compensation of passenger service plus freight service,—this in accordance with the suggestion of the circuit court of appeals.

The evidence in the case is largely that of the law cases, together with depositions of Grief and others who are not now available, and was argued and submitted accordingly.

Mr. F. H. Dexter for plaintiff.

Mr. Chas. Hartzell for defendants.

HAMILTON, Judge, delivered the following opinion:

1. Answer under oath not being waived, a sworn answer is filed in the case, denying the principal allegations of the bill, particularly as to the alleged reformation of the contract on September 16, 1920. The equity rules and consistent practice declare that if an answer to a bill is sworn to, it has the effect of evidence in favor of the defendant, unless overcome by satisfactory testimony of two witnesses or one witness corroborated

by circumstances which give it greater weight than the answer. Bates, Fed. Eq. Proc. § 322; Clark v. Van Riemsdyk, 9 Cranch, 153, 3 L. ed. 688 (Marshall). In a somewhat similar case, where the question was whether a deed was intended as an absolute conveyance or a security, it was held that the denials of the answer must be overcome by the satisfactory evidence of two witnesses or of one witness corroborated by circumstances equivalent to another. Vigel v. Hopp, 104 U. S. 441, 26 L. ed. 761; 2 Story, Eq. Jur. § 1528; Campbell v. Northwest Eckington Improv. Co. 229 U. S. 561, 57 L. ed. 1330, 33 Sup. Ct. Rep. 796; Wilcox v. El Banco Popular de Economias y Prestamos, 166 C. C. A. 518, 255 Fed. 442. The old equity rule, therefore, has never been changed, and it must apply in the case at bar unless the variation of the contract sought is proved by two satisfactory witnesses or one accompanied by convincing circumstances. Sometimes evidence arising from circumstances is even stronger than the testimony of a single witness. 1 Bates, Fed. Eq. Proc. § 322.

2. Apart from this rule of procedure, the law as to reformation of contracts requires very complete proof. There is no question that equity has jurisdiction to declare reformation in a proper case, and indeed this is one of the most important branches of equity jurisprudence, and its history goes back a long way. Equity has jurisdiction to reform written instruments, however, in but two well-defined ways: (1) Where there is a mutual mistake and the contract in its written form does not express what was intended; and (2) where there is a mistake on the part of one party accompanied by fraud or its equivalent on the other. 6 Pom. Eq. Jur. 3d ed. § 675; 3 Pom. Eq. Jur. 2d ed. § 1376. Parol evidence is admissible, the very object of the

American R. Co. v. Ponce & G. R. Co.

procedure being not to conform to any strict rules of law as to form, but to get at the real intention of the parties. 9 Cyc. 579, 580. In order to reform a contract in equity it must be shown that the true intention of the parties was different from the contract as reduced to writing, and this must be shown by clear proof. Wilson v. Deen, 74 N. Y. 531. Carelessness, however, will not be aided by the court, since that would encourage culpable negligence. 1 Story, Eq. Jur. § 146; Grieve v. Grieve, 15 Wyo. 358, 9 L.R.A.(N.S.) 1211–1213, 89 Pac. 569, 11 Ann. Cas. 1162. The proof required must be convincing. Pomeroy goes so far as to invoke the criminal rule, that the fact of mistake must be established beyond a reasonable doubt. 2 Pom. Eq. Jur. § 859, and citations. The Supreme Court says that the testimony must be clear, unequivocal, and convincing, a mere preponderance being insufficient. Maxwell Land-Grant Case, 121 U. S. 325, 30 L. ed. 949, 7 Sup. Ct. Rep. 1015; Colorado Coal & I. Co. v. United States, 123 U. S. 307, 31 L. ed. 182, 8 Sup. Ct. Rep. 131; United States v. American Bell Teleph. Co. 167 U. S. 224, 42 L. ed. 144, 17 Sup. Ct. Rep. 809. The different judicial expressions as to the strength of proof are summed up in 23 R. C. L. 367. Some of the expressions are "very clear," "clear and satisfactory," "entirely exact and satisfactory," "clear and convincing," "establishing the fact beyond cavil," "beyond reasonable controversy," "free from doubt," "no reasonable doubt," "without the shadow of a doubt," and even "as satisfactory as if admitted."

3. The above principles have been established in a court of equity as a part of the same system of common-law development which brought the Statute of Frauds. In Porto Rico and in

XI. Porto Rico.—31.

Spanish possessions generally there was not felt to be the same necessity for reducing contracts to writing, and the law is not so emphatic in regard to the mode of proof as in Anglo-Saxon countries. A contract generally need not be in writing at all if it is otherwise clear. This will be shown by the following sections from the Civil Code:

Sec. 1225. Contracts are perfected by mere consent and from that time they are binding not only with regard to the fulfilment of what has been expressly stipulated but also with regard to all consequences which, according to their character, are in accordance with good faith, use, and law.

Sec. 1228. There is no contract unless the following requisites exist: 1 The consent of the contracting parties. 2 A definite object which may be the subject of the contract. 3 The cause for the obligation which may be established.

Sec. 1245. Contracts shall be binding, whatever may be the form in which they may have been executed, provided the essential conditions required for their validity exist.

Sec. 1249. In order to judge as to the intention of the contracting parties, attention must principally be paid to their acts, contemporaneous and subsequent to the contract.

Sec. 1252. The stipulations of a contract should be interpreted in relation to one another, giving to those that are doubtful, the meaning which may appear from the consideration of all of them together.

While a local law of evidence may not be in all respects binding, especially in equity proceedings, that of Porto Rico is a summary of common-law evidence, and may be looked at to advantage. The Law of Evidence of March 9, 1905, provides as follows:

Sec. 25. When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore, there can be between the parties and their representatives, or successors in interest, no evidence of the terms of the agreement other than the contents of the writing, except in the following cases: 1. Where a mistake or imperfection of the writing is put in issue by the pleadings. 2. Where the validity of the agreement is the fact in dispute. But this section does not exclude other evidence of the circumstances under which the agreement was made or to which it relates, as defined in § 34, or to explain an extrinsic ambiguity, or to establish illegality or fraud. The term "agreement" includes deeds and wills, as well as contracts between parties.

Sec. 27. In the construction of a statute, the intention of the legislature, and in the construction of the instrument, the intention of the parties, is to be pursued, if possible; and when the intention of a general provision and that of a particular one are inconsistent, the latter is paramount to the former.

Sec. 28. For the proper construction of an instrument the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret.

The Supreme Court has approved what is equivalent to § 25 of the Law of Evidence in the case of Philippine Sugar Estates Development Co. v. Philippine Islands, 247 U. S. 385, 62 L. ed. 1177, 38 Sup. Ct. Rep. 513.

4. The contemporaneous construction by the parties is always of the highest value, and should be adopted by the court. 9

Cyc. 588; Chicago v. Sheldon, 9 Wall. 50, 19 L. ed. 594; Paige v. Banks, 13 Wall. 608, 20 L. ed. 709. All negotiations between the parties should be looked at in order to construe the contract. 9 Cyc. 579 and 592; Etting v. Bank of United States, 11 Wheat. 59, 6 L. ed. 419. This introduces a question of fact, and this is always more difficult to solve than that of law. The difficulty of every case is not so much as to the law as in the application of the principles of law to the disputed facts of the particular case.

5. The fact of the case as arrived at after careful consideration of all the evidence offered is that the parties hereto for good reasons determined, in order to get rid of the question of public carriage, that the American Railroad Company should attend to the common carriage required by law, while the centrals should haul cane for their own purposes. They therefore entered into a contract on September 7, 1910, carefully providing for all contingencies, amongst others for a mixed train of passengers and freight when that was operated. Within ten days afterwards there was a conference at which train schedules at least were regulated. The American Railroad Company was necessarily to keep the accounts, and in point of fact from the very beginning this railroad ran only a mixed train, charged for as passenger plus freight services according to the contract, rendered accounts accordingly, and the undisputed contemporary construction of the parties as shown by letters, accounts, and otherwise, for the year the contract was to run, fully approved the operation of the mixed train in lieu of all others, and at the double compensation provided for in the contract for passenger and for freight service. The propriety of this has also been sustained by the verdict of the jury and judgment of

this court. It is no longer open to question as the record stands. There must be some explanation of this variation between the written contract and its method of execution. The plaintiff contends that the contract was modified at the meeting nine days after its execution, but his evidence is, to say the least, unsatisfactory. In the first place, in the early stages of this long litigation the plaintiff's manager and his attorney had not such idea and made no such contention. Manager Villard at that time, and indeed down to the present time, has consistently contended that the proper construction of the contract itself called for this double charge for mixed service, although he claims that his memory has been refreshed since his original testimony, by looking at correspondence now in evidence, and that there was an early modification which adopted this construction. It is puzzling to solve the problem. The corporations are operated by good business men, the interests involved are large, and the evidence is largely in writing. Nor is the difficulty confined to the plaintiff. The defendant Ponce & Guayama Railroad Company tried to explain its acquiescence in this construction or modification by laying it upon inefficient supervision on the part of their agent, Hughart, corrected, as they claim, when a new manager named Farnum came to Aguirre after the first year. But Hughart bound them for the first year. Thomp. Corp. §§ 1602, 1609. Certain it is that the double charge for mixed service was made and agreed to all the time during the running of the first contract, whatever be the explanation of this fact. It is not at all clear or convincing, not to say proved beyond a reasonable doubt, that the contract was amended in this or any other particular at the Ponce meeting nine days after the contract was signed. It may have been so, but the measure of proof

is not that required in equity to reform a contract. It would be so inequitable, however, to allow settlements to be made upon that basis, and fully acquiesced in by both parties for the whole running of the contract, and then permit a new manager to tear up the old adjustments, for these written settlements and assents could themselves be considered as justifying the conclusion of court and jury for the term of the contract, that is to say, for the first year.

The equity suit at bar, however, relates more particularly to the contract for the second year. Negotiations show that it was desired to renew the contract upon the lines or terms of the existing contract, and the actual renewal itself refers to the contract dated September 7, 1910, and to nothing else. The wording could hardly have been more explicit in adopting the written previous contract verbatim. After providing that the parties "do hereby extend for the term of one year the said memorandum of agreement dated September 7th, 1910, from the 30th day of September, 1911, to the 30th day of September, 1912, with all its covenants and conditions," the next clause says: "This agreement is to be annexed to the said agreement of September 7th, 1910, and is to considered as continuing such original agreement, with all its covenants, conditions, and provisions, without change except as to the date of the expiration thereof."

It might have been the intention of the parties to renew the contract and also its original modification or construction, whichever way it was considered, but the renewal itself distinctly calls for the unchanged contract of September 7, 1910. If any remodeling of that contract was contemplated, at least it is not shown clearly, unequivocally, not to say beyond a reasonable

doubt. There is no evidence of another meeting to adopt any modification for the second year, nor was there any contemporaneous construction based upon accepted accounts between the two railroad companies. If the matter has been left in such doubt that the court cannot adopt what might possibly have been the intention of the parties, it is not the fault of the court. The most that can be said for the contention of the plaintiff is that it might have been the intention of the parties to renew the contract as modified after its execution; but this, on the phraseology of the renewal, is; to say the least, doubtful, and does not come up to the measure of proof required by law in cases of reformation of contract.

It follows that the bill must be dismissed, and it is so ordered.